SLIP OPINION

Cite as 2015 Ark. App. 202

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-1058

| | |
|---|---|
| JAMES COX | Opinion Delivered APRIL 1, 2015 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 26JV-14-284 |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE VICKI SHAW COOK, |
| HUMAN SERVICES and MINOR | JUDGE |
| CHILDREN | |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant James Cox appeals from the Garland County Circuit Court's September 24, 2014 order terminating his parental rights to his children, K.C. and Z.C. Appellant argues that the termination of parental rights (TPR) was in contravention of Arkansas Code Annotated section 9-27-341(a)(3) (Supp. 2013) and was not in the children's best interest. We affirm.

On March 16, 2014, the Arkansas Department of Human Services (ADHS) responded to a request for a safety assessment based on allegations that appellant provided alcohol to, and had sexual contact with, D.B.—a teenage girl with whom he stood in *loco parentis*. Appellant had been in a long-term relationship with D.B.'s mother, Amanda Weston, and had two children with her—K.C. and Z.C. ADHS entered into a safety agreement with Ms. Weston in which she was allowed to retain custody of the children if she did not allow appellant to

have contact with them; however, on April 6, 2014, ADHS received information that Ms. Weston was not abiding by the agreement. As a result, ADHS placed an emergency hold on K.C. and Z.C., along with Ms. Weston's two children from a prior relationship. The circuit court entered an order of emergency custody, as well as a subsequent order finding probable cause to maintain the children in ADHS custody, and appellant was referred for a psychological evaluation pending the adjudication hearing.

Appellant completed the psychological evaluation with forensic psychologist Dr. George DeRoeck on April 29, 2014. Appellant also completed six weekly sessions with therapist Lee Lowder, to whom ADHS referred appellant for counseling, and Mr. Lowder issued a narrative report just prior to the adjudication hearing.

On June 25, 2014, the circuit court held an adjudication hearing and found that the children were dependent-neglected due, in part, to appellant's sexual abuse of D.B. The circuit court further found aggravated circumstances based on that abuse, and applied the aggravated-circumstances findings to K.C. and Z.C. as well, based on their being half-siblings of D.B., whose life was endangered by appellant when he provided sufficient alcohol to D.B. that her blood-alcohol level was .29 at the time of the incident. The circuit court allowed appellant supervised visitation with K.C. and Z.C. only, with the length of the visits to be within the discretion of the children's therapist, David Todd. The goal of the case was reunification with Ms. Weston, with ADHS to provide appellant with services.

On July 1, 2014, before the adjudication order was entered, ADHS filed a motion for reconsideration, seeking to set aside a portion of the adjudication order regarding appellant's

visitation. ADHS asserted that Mr. Todd, who testified at the adjudication hearing, was not aware that the allegations surrounding the incident with D.B. had been substantiated, that since the adjudication, appellant had been formally charged with sexual assault, and that the caseworker and the therapist had recommended visitation only because they thought the goal would be reunification with both parents. ADHS further stated that it would be seeking termination of appellant's parental rights because the goal was now "reunification with the mother."

Appellant's counsel filed a response, and the circuit court held a hearing on July 9, 2014. The circuit court entered an order rescinding appellant's right to supervised visitation with his children and denied an oral motion made by appellant's counsel to appoint a separate attorney ad litem for K.C. and Z.C.

On July 18, 2014, ADHS filed a formal TPR petition as to appellant, specifically asserting that the termination statute allowed termination of only one parent's parental rights. ADHS alleged that the potential harm to the children if they were returned to appellant's custody was a risk of neglect and abuse—sexual and physical—based on inadequate supervision because of alcohol consumption.

On July 21, 2014, appellant's counsel filed a motion to reconsider the order rescinding appellant's visitation. The record does not reflect a written order addressing appellant's motion.

On September 24, 2014, the circuit court held a hearing on ADHS's TPR petition. At that hearing, Mr. Todd testified and acknowledged that he had never talked to appellant,

even though Dr. DeRoeck had recommended that supervised visitation be implemented to assess the quality of the interaction between appellant and his children. Mr. Todd also noted that both children loved their father and talked about him affectionately, although they were both fearful of the situation that existed when their parents were together. Mr. Todd stopped short of stating that he would recommend TPR, although he stated that there was always a concern that appellant's behavior toward D.B. could be repeated in the future with his own children. On cross-examination, Mr. Todd admitted that there were no allegations of any abuse toward appellant's own children, that the domestic violence was between appellant and Ms. Weston, and that it would be speculative to say how the children would be influenced if appellant could have visitation with them separate and apart from a relationship with Ms. Weston.

Appellant's therapist, Mr. Lowder, who had seen appellant weekly for four months at ADHS's request, opined that appellant did not pose a threat to his children. Mr. Lowder stated that while appellant used extremely poor judgment in regard to the incident with D.B. that initiated ADHS's involvement, he believed that the incident was due to appellant's "intemperate use of alcohol," and he did not believe appellant was a predator.

The only other witness to testify was ADHS caseworker Jamie Moran who recommended TPR because of the potential harm of sexual abuse to appellant's own children or the risk of him providing them with alcohol. She further stated that appellant did not seem to think that what happened was a "big deal," but this testimony was contradicted by Mr. Lowder.

4

The circuit court granted ADHS's TPR petition. While the circuit court specifically noted that Mr. Lowder's testimony was credible, it found that it was in the best interest of the children to terminate appellant's parental rights, even though the goal was reunification with Ms. Weston, because of appellant's "reaction to therapy and lack of judgment and insight as to his actions of abuse and neglect . . . , [his] potential to abuse alcohol, and domestic violence in the home . . . ." On September 24, 2014, the circuit court entered an order terminating the parental rights of appellant to K.C. and Z.C. Appellant filed his timely notice of appeal on October 1, 2014.

The purpose of terminating a parent's rights to his or her child is to provide permanency in the child's life when return to the family home "cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9-27-341(a)(3). A court may order TPR if it finds there is an "appropriate placement plan" for the child, section 9-27-341(b)(1)(A), and further finds by clear and convincing evidence that TPR is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Finally, there must be clear and convincing evidence supporting one or more of the grounds for TPR listed in section 9-27-341(b)(3)(B).[1]

---

[1] In the adjudication order, the circuit court found that the facts were proven by the higher standard "clear and convincing," otherwise reserved for orders of termination. Because appellant did not appeal from that order, those findings cannot be contested and automatically carry over as grounds supporting termination. *See, e.g.*, *Hannah v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 502.

A circuit court's order terminating parental rights must be based upon findings proven by clear and convincing evidence. *See Aday v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 677. Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.* On appeal, the appellate court will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* This court reviews TPR orders de novo. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008).

Section 9-27-341(c)(2)(A)(iii) allows for the termination of one parent's parental rights even though the other parent's rights will remain intact, but this bifurcated approach to TPR still must be in the children's best interest, and it must comport with the purpose of termination, as set out in our Juvenile Code. The relevant statutes make it plain that the preferred permanency goal for a child in ADHS custody is to return the child to his or her parent(s). Ark. Code Ann. § 9-27-338(c)(1) & (2) (Supp. 2013). The permanency-planning statute, section 9-27-338(c)(3)(A), does not authorize ADHS to seek TPR where the child is being cared for by a relative and TPR is not in the child's best interest. A similar provision is found in section 9-27-359(b)(1) (Supp. 2013) regarding review hearings.

*Statutory Grounds*

In his appeal, appellant does not specifically challenge the circuit court's determination that statutory grounds existed under section 9-27-341(b)(3)(B) for TPR. Nevertheless, he

urges that TPR cannot be granted unless such a decision is also in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).

*Best Interest*

Appellant challenges whether the applicable statutes permit a court to terminate the rights of one parent but not the other when the plan for the children is for them to remain in the other parent's custody, and whether such TPR is in the children's best interest. The public interest behind TPR is to protect children who have been abused or neglected and removed from their parents' custody, because such an impermanent and indeterminate status works against the children's welfare and best interest. *See Hathcock v. Ark. Dep't of Human Servs.*, 347 Ark. 819, 69 S.W.3d 6 (2002). Appellant maintains that his children's fate was not indeterminate because the goal was for them to be returned to Ms. Weston's custody where they had been at the time of their removal. Because permanency would not be achieved through adoption, appellant argues that it was not necessary to clear the way to permanency by terminating his parental rights. Further, he claims that it was not in their best interest because he posed no credible threat of harm to them.

Appellant notes this court's reflections on potential negative financial implications that termination might have if one parent's rights are terminated, but not the other. In *Hall v. Arkansas Department of Human Services*, 101 Ark. App. 417, 278 S.W.3d 609 (2008), this court recognized that such an action places the terminated parent in the position of a stepparent, if the parents are married, and would otherwise terminate that parent's obligation to his children for such things as child support. *Id.* Although this court affirmed the termination

7

SLIP OPINION

of the father's parental rights in *Hall*, we held that the appellant's argument was based solely upon the "preference prong" of section 9-27-338(c)—the permanency-planning statute—and that he put forward no best-interest analysis. *Id.*

Appellant cites *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, in which this court addressed a similar factual situation and found that TPR was clearly erroneous because the permanency plan for the child was to remain in her mother's custody. The *Caldwell* court merely concluded that the circuit court's best-interest finding was clearly erroneous; therefore, *Caldwell* is distinguishable from this case. In *Caldwell*, there was no evidence that the father physically abused or harmed any child. But appellant's actions were vastly different: (1) appellant caused his children K.C. and Z.C.'s fourteen-year-old half-sister—D.B.—to be hospitalized for alcohol poisoning; (2) appellant sexually fondled D.B.; and (3) according to expert testimony, there is a likelihood that K.C. and Z.C. might suffer the same or similar fate. *See also Hayes v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 21.

We find no error in the circuit court's findings. The Juvenile Code requires that a best-interest finding be based upon a consideration of two factors under section 9-27-341(b)(3)(A)—including the potential harm caused by continuing contact with the parent, parents, or putative parent or parents. It is the overall evidence, rather than proof of each factor, that must demonstrate that TPR is in the child's best interest. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005). The potential-harm

SLIP OPINION

evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722.

The record indicates that evidence of potential harm was presented to the circuit court. On March 16, 2014, ADHS responded to the state police's Crimes Against Children Division (CACD) safety-assessment request. This assessment followed two allegations made about appellant and concerning fourteen-year-old D.B. First, appellant had given D.B. alcohol, leading to her hospitalization for alcohol poisoning. Second, appellant "admitted to fondling D.B. on 'her private parts.'" Ms. Weston agreed that she would not allow appellant to have contact with K.C. and Z.C., but the next month, CACD contacted ADHS, expressing concern that Ms. Weston was not following the protection plan and by allowing appellant contact with K.C. and Z.C. D.B. confirmed that appellant had been "staying [in the same home with Ms. Weston and her children] because he [had] nowhere else to live." So ADHS assumed immediate emergency custody of D.B., K.C., and Z.C.

Two months later, the circuit court determined that D.B., K.C., and Z.C. were dependent-neglected based in part on findings that appellant had sexually abused D.B. and that appellant had "permitted [D.B.] to consume alcohol and [D.B.] suffered from blood alcohol poisoning with a B.A.C. level of .29, which resulted in [D.B.] being hospitalized and created a life-threatening situation." This evidence led the circuit court to find that the children had been subjected to aggravated circumstances.

The evidence at the TPR hearing revealed additional concerns regarding potential harm. Mr. Todd—a fourteen-year licensed counselor and recognized mental-health expert—testified in his role as D.B., K.C., and Z.C.'s counselor. He testified that

> the cycle of being abusive to a child does not cease . . . . That that would make a very strong likelihood that any child in his home, that that behavior could be repeated . . . . If a parent has sexually abused and been inappropriate with a child that-that like strong-strong likelihood of repeating that behavior is there.

Mr. Todd explained that appellant's abuse would repeat—that K.C. and Z.C. would observe and then abuse their children:

> [A]ny child in a home where there's violence and drugs and sexual perpetration . . . they could fall victim of the violence in some way or that they would observe that behavior and repeat that behavior when they become an adult and if they choose to have a family. So I think modeling repetitive patterns of domestic violence, drug abuse, and . . . sexual perpetration it's highly repetitive as far as a cycle so the fact that they could possibly be sexually harmed, physically harmed or repeat that cycle as an adult is a high likelihood.

This court has held that past behavior is correctly viewed as a predictor of potential harm. *See Dowdy, supra.* The evidence before us indicates that appellant's sexual and physical abuse raised concerns with the examiner, therapist, case worker, and ultimately the circuit court about his ability to satisfy K.C.'s and Z.C.'s moral, physical, and intellectual developmental needs. The admitted evidence thus indicates that the circuit court's finding that continued contact with appellant would cause K.C. and Z.C. to suffer potential harm does not leave us with a definite and firm conviction that a mistake was made. This is particularly true given that, since a child's best interest is at issue, the circuit court's findings are given special deference. *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004). We hold that the potential-harm finding therefore was not clearly erroneous.

SLIP OPINION

Appellant's physical harm to D.B. was significant enough that she was hospitalized. The circuit court furthermore found that appellant had subjected his children's half-sibling to aggravated circumstances. Appellant does not contest this aggravated-circumstances finding; accordingly, the question of whether it was clearly erroneous has for appeal purposes been waived. *See Wright v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 676, 449 S.W.3d 721.

Appellant's remaining argument challenges the sufficiency of the circuit court's best-interest finding—specifically that the circuit court should have afforded greater weight to Mr. Lowder's testimony. It is undisputed that Mr. Lowder had been appellant's therapist and was deemed a mental-health expert, but by the time of the TPR hearing, Mr. Lowder was no longer appellant's therapist. Mr. Todd was also deemed, without objection, to be a mental-health expert and had provided counseling to all the children involved. The circuit court weighing the evidence differently than appellant wanted it weighed is not reversible error. *See Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). To reverse on this basis would require this court to act as a super fact-finder or second-guess the circuit court's credibility determination, which is not our function. *See Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149.

Affirmed.

GLOVER and HOOFMAN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.

SLIP OPINION

Cite as 2015 Ark. App. 202