

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–946

RAZORBACK CAB OF FORT SMITH, INC., and MARK NUNEZ

APPELLANTS

V.

DANAYE AMON

APPELLEE

Opinion Delivered August 24, 2016

APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT
[NO. CV-2013-906]

HONORABLE J. MICHAEL FITZHUGH, JUDGE

AFFIRMED

**M. MICHAEL KINARD, Judge**

In this car-accident case, appellants Razorback Cab of Fort Smith and Mark Nunez (collectively "Razorback") appeal from a $50,000 judgment in favor of appellee Danaye Amon. Razorback argues that the circuit court erred in various rulings during the course of trial. We affirm.

## I. *Facts*

The accident occurred on January 15, 2013, at the intersection of Towson Avenue and Fresno Street in Fort Smith. Amon was driving north in the inside lane of Towson when the vehicle in front of her moved left into a center turn lane. Amon continued into the Fresno intersection at the posted speed limit of forty miles per hour. On the other side of the intersection, facing south, Mark Nunez was driving a Razorback Cab minivan and waiting to turn left onto Fresno. He began his turn but did not see Amon coming toward him and

SLIP OPINION

collided with her in the middle of the intersection. Amon's vehicle veered right and came to rest after striking a railroad-crossing post.[1]

Following the accident, Amon was transported by ambulance to the emergency room where she complained of hand, leg, and foot pain. X-rays showed no broken bones or other serious injuries, so Amon was released with anti-inflammatory and pain medications and was instructed to follow up with her primary-care physician. Amon later developed back and neck pain, for which she saw several doctors, including a pain-management specialist; received additional pain medications and muscle relaxers; and visited a chiropractor. By the end of April 2013, Amon's medical doctors had released her from treatment. Her chiropractic treatment continued through April.

In September 2013, Amon sued Razorback for negligence in connection with the wreck. Razorback defended primarily on the grounds that Amon was partly at fault and that her injuries were exaggerated or preexisting. Following a two-day trial, the jury found Razorback wholly at fault and awarded Amon $50,000, which included compensation for medical bills, pain and suffering, and vehicular damage. The circuit court entered judgment on the verdict and denied Razorback's motion for a new trial. This appeal followed.

## II. *Closing Arguments*

Razorback's first argument is that Amon's counsel made an improper "send-a-message" statement to the jury during trial. A send-a-message statement is one in which the

---

[1]The railroad intervened below and recovered $4,933.23 from Razorback for damage to the crossing post. The railroad is not a party to this appeal.

2

plaintiff in a civil trial asks the jury to award damages for purposes of punishment and deterrence rather than compensation. Such statements are generally prohibited in cases where, like this one, no punitive damages are sought. *See Stecker v. First Commercial Trust Co.*, 331 Ark. 452, 962 S.W.2d 792 (1998).

The send-a-message issue arose at trial during the rebuttal portion of Amon's closing arguments when her counsel made the following remark:

> They [Razorback] are going to keep running until someone catches them and says, it stops here, and that is what I am asking you to do, to step up and let them know that safety matters in Arkansas.

Razorback objected, noting that the court had granted a motion in limine prohibiting send-a-message statements, and asked that the jury be instructed to disregard the remark. The court declined to do so and instead told Amon's counsel, "Don't go any further than that." Amon's counsel quickly completed his closing argument, and Razorback made no more objections. Following the entry of judgment, Razorback moved for a new trial, which the court denied. Razorback now appeals the court's rulings.

Our standard of review imposes a heavy burden on Razorback to demonstrate grounds for reversal. We accord wide discretion to the circuit court in controlling, supervising, and determining the propriety of counsel's closing arguments. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). We will not reverse a circuit court's ruling regarding a closing argument absent a manifest abuse of discretion. *Id.* An abuse of discretion occurs

SLIP OPINION

when the circuit court acts improvidently or thoughtlessly, without due consideration. *Milner v. Luttrell*, 2011 Ark. App. 297, 384 S.W.3d 1.

We cannot say that the circuit court abused its discretion in this instance. The remark by Amon's counsel merely echoed his overriding theme that Razorback was "running" from its responsibilities by blaming Amon for the accident and failing to produce Mr. Nunez as a witness at trial.[2] Moreover, Amon's closing arguments, when viewed in their entirety, can reasonably be viewed as a plea to hold Razorback liable for the accident, rather than a plea to punish Razorback. *See Stecker, supra* (holding that a plaintiff's argument, when viewed in its entirety, did not constitute a plea for punitive damages); *Nishihama v. City and County of San Francisco*, 112 Cal. Rptr. 2d 861 (Cal. Ct. App. 2001) (holding that an alleged send-a-message argument was less a plea for punitive damages than a plea for a verdict of liability). In light of these circumstances, coupled with our strict standard of review, we find no reversible error in the circuit court's exercise of its considerable discretion in this area.

### III. *Deposition and Medical Notes of Dr. Collins*

Razorback next argues that the circuit court erred in excluding the deposition testimony of Dr. Vera Collins and in redacting the doctor's medical notes to remove references to Amon's psychiatric treatment and alleged "drug-seeking" behavior.

Amon's visit to Dr. Collins occurred in mid-April 2013—after Amon had been released by her car-accident physicians but shortly before she completed her chiropractic

---

[2]Nunez's deposition was read into evidence.

treatment. It is undisputed that Amon did not seek additional pain medications or muscle relaxers from Dr. Collins for her car-accident injuries. Rather, Amon presented to Dr. Collins with "complaints of recurrent anxiety, which she claims to have had for the past several years." Dr. Collins's notes recited a somewhat inaccurate history of Amon's recent medical treatment and medications; quoted Amon's statement that she could not get in to see her psychiatrist that week and needed "something for anxiety now"; and concluded with a strong suspicion that Amon was engaging in "drug-seeking behavior." The doctor prescribed Buspar (an anti-anxiety medication) for Amon and advised her to keep her appointment with her psychiatrist. The doctor also conducted a general exam of Amon and found no musculoskeletal issues, gait problems, or back/neck problems.

Before trial, Amon moved to exclude Dr. Collins's notes on the grounds that they were irrelevant or more prejudicial than probative, given that her visit to Dr. Collins was not related to the car accident. The court admitted the notes into evidence but redacted those portions referring to Amon's psychiatrist and her alleged drug-seeking behavior. Still, the court ruled that the unredacted notes might be admissible if the doctor were available to testify at trial and clarify her remarks about the drug-seeking behavior.

Not long thereafter, Razorback took Dr. Collins's deposition. The doctor testified that she did not remember Amon but that, based on her notes; her interaction with Amon; her review of Amon's other medical records; and the fact that Amon was already "under a chronic pain management program," it was her opinion that Amon was drug-seeking. On cross-

SLIP OPINION

examination, Dr. Collins acknowledged that she did not treat Amon for pain and that her notes did not reflect any request by Amon for pain medications or muscle relaxers. However, when Amon's counsel attempted to probe further into the basis for the doctor's drug-seeking diagnosis and asked the doctor to reexamine the records from Amon's car-accident physicians, the doctor's personal attorney, who was present during the deposition, objected and stated that the doctor was "not here as an expert witness." The attorney further said that the doctor was "not going to review other documents and form opinions."

After the deposition had been taken, Razorback moved to introduce it into evidence.[3] The court refused on the ground that Amon's cross-examination of Dr. Collins had been impeded by the doctor's attorney. Razorback now argues that the circuit court erred in its evidentiary ruling.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *Brumley v. Keech*, 2012 Ark. 263. Also, a circuit court's evidentiary ruling will not be reversed absent a showing of prejudice or that a substantial right of the appellant is affected. *Howard v. Adams*, 2016 Ark. App. 222, ___ S.W.3d ___.

We first address the circuit court's decision to redact the psychiatric and drug-seeking references in Dr. Collins's notes. We see no abuse of discretion in this ruling. The evidence showed that Amon had a chronic anxiety issue and presented to Dr. Collins solely for

---

[3]The doctor was out of the country on the date of trial.

treatment of that issue. Amon sought no compensation from Razorback for her visit to Dr. Collins or for any anxiety problems or other psychiatric problems. Moreover, none of Amon's records from her previous treating physicians stated that she was drug-seeking or that she was receiving anything more than the ordinary doses of pain and other medications for her car-wreck injuries. Thus, the circuit court may well have reasoned that Dr. Collins's redacted notations bore little, if any, relevance to Amon's case against Razorback.

We also see no abuse of discretion in the court's decision to exclude Dr. Collins's deposition testimony. It is important to note that Razorback presented Dr. Collins as both an expert witness and a fact witness. An expert may be required to disclose underlying data or facts on cross-examination. Ark. R. Evid. 705. Additionally, expert testimony is subject to being stricken if the expert is unresponsive or resistant during his or her examination. *See generally McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007) (applying the abuse-of-discretion standard in affirming the circuit court's decision to strike an expert's deposition testimony for lack of responsiveness). Here, Dr. Collins was forthcoming while testifying on direct examination that Amon was drug-seeking. However, when Amon tried to elicit more information during cross-examination on the subject, the doctor's attorney restricted her testimony and stated that the doctor would not serve as an expert witness. Given Amon's inability to conduct a thorough cross-examination of Dr. Collins with regard to her expert opinion, and, consequently, the jury's lack of opportunity to fully evaluate the basis for Dr.

SLIP OPINION

Collins's expert opinion, the circuit court was understandably reluctant to admit Dr. Collins's deposition into evidence.

Razorback argues, however, that Dr. Collins's deposition testimony should have been admitted as a fact witness because her testimony cast doubt on whether all of Amon's medical bills were related to the car accident. In particular, Razorback cites the fact that Amon continued with her chiropractic care after her mid-April visit to Dr. Collins, even though Dr. Collins testified that Amon suffered no musculoskeletal, neck, or back issues at that time. This admittedly impeaching proof, however, came into evidence through another source—the doctor's own notes. The notes clearly reflected the doctor's finding that Amon was not suffering from these types of physical ailments at the time of her mid-April visit. Exclusion of evidence is not prejudicial if the same evidence was introduced through another source and was before the jury for its consideration. *See generally Findley v. State*, 307 Ark. 53, 818 S.W.2d 242 (1991).

Razorback also notes that one of Amon's previous treating physicians, Dr. Weddle, indicated that there was "a large anxiety component" to Amon's complaints of pain from the wreck. But, as previously mentioned, Amon sought no compensation from Razorback for anxiety as the result of the car accident. Both Dr. Collins's notes and Amon's own testimony showed that Amon's visit to Dr. Collins was for the purpose of treating long-standing anxiety issues. Moreover, Dr. Weddle's notes were admitted into evidence, thus allowing the jury to determine if any of Amon's complaints were anxiety-based rather than caused by the accident.


For these reasons, we find no reversible error on this point.

IV. *Cross-Examination of Dr. Silver/Discovery Issue*

Before trial, Amon propounded interrogatories and requests for production to Razorback, seeking information about exhibits or other items of demonstrative evidence that Razorback would use at trial. These included a request that Razorback identify items to be used in connection with cross-examination or impeachment. Razorback objected to this interrogatory in part but otherwise stated that it would supplement its response.

At trial, Amon's discovery requests became pertinent during the testimony of Amon's pain-management specialist, Dr. Danny Silver. Dr. Silver testified that he treated Amon on three occasions, during which he prescribed pain medication, and that Amon received proper care from her chiropractor. Razorback sought to impeach Dr. Silver's testimony with (1) a 2011 letter of public concern from a medical board in North Carolina, where Dr. Silver had previously practiced; (2) three Social-Security-disability cases in which Dr. Silver's assessment of a patient's disability was allegedly discounted by an administrative law judge; and (3) records of a 2014 proceeding before the Arkansas Medical Board. The circuit court refused to allow Razorback to use these documents because Razorback had not provided them to Amon during discovery. We review the circuit court's decision for an abuse of discretion. *Poff v. Elkins*, 2014 Ark. App. 663, 449 S.W. 3d 315 (discovery rulings); *Brumley*, *supra* (evidentiary rulings).



A court may impose discovery sanctions when a party fails to supplement its discovery responses. Ark. R. Civ. P. 37(e). Here, the circuit court apparently determined that, in fairness, Razorback should have provided the above-mentioned documents to Amon so that she could prepare Dr. Silver for cross-examination and possible impeachment. The court's concern was reasonable considering that Amon's discovery asked for this particular type of document. Razorback argues, however, that the documents in question were public records and therefore freely available to Amon. Regardless of the public nature of the documents, the relevant point is that, due to Razorback's discovery violation, Amon was left unaware that Razorback would use the documents at trial. We therefore find no abuse of discretion in the court's ruling.

On a related matter, Razorback argues that the circuit court erroneously allowed Dr. Silver to offer a nonresponsive "soliloquy" during cross-examination in which he explained at length a 2010 ruling against him by the Arkansas Medical Board. We defer to the court's broad discretion to exercise reasonable control over the mode of interrogating witnesses, Ark. R. Evid. 611(a) & (b), and decline to reverse on this basis.

## V. *Cross-Examination of Amon*

Razorback argues next that the redaction of Dr. Collins's medical notes interfered with its ability to cross-examine Amon as to the nature and extent of her injuries. We adequately covered this point under an earlier heading and need not address it further.

## VI. *Denial of New Trial*

10

According to Razorback, the abovementioned errors by the circuit court warranted a new trial. As we have found no reversible error to this point, Razorback's argument is not well taken.

Razorback does add one argument. It contends that Amon must have been partly at fault for the accident because she was driving the speed limit (forty miles per hour) when approaching the Towson-Fresno intersection, which contained a railroad crossing. Razorback cites Arkansas Code Annotated section 27-51-201(d) (Repl. 2010), which provides that a vehicle shall be driven at an appropriate reduced speed when approaching an intersection or a railway crossing.

A new trial was not required. The jury could reasonably have found that, regardless of Amon's speed, Razorback was wholly responsible for the accident because Nunez turned in front of Amon. Further, even if it could be said that Amon violated section 27-51-201, violation of a statute is not necessarily negligence but only evidence of negligence to be considered with all other facts and circumstances of the case, as the jury was instructed. *See* AMI Civ. 601 (2016).

## VII. *Jury Instruction*

Finally, Razorback argues that the court erred in failing to give the following proffered instruction:

> It is for you, the jury, to determine whether speed, under conditions existing, was reasonable and prudent. A posted speed limit only fixes the maximum speed allowed, and does not give a driver the right to drive that fast under any and all conditions.

Obeying the speed limit is not all that is required of drivers in the exercise of ordinary care.

We cannot agree. It is not error for the circuit court to refuse a proffered instruction when the stated matter is correctly covered by other instructions. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). Here, the court instructed the jury that it is the duty of a driver to operate her vehicle at a speed no greater than is reasonable and prudent under the circumstances and that the vehicle must be operated at an appropriate reduced speed when approaching an intersection or a railway crossing. These instructions do not differ in any significant way from the proffered instruction.

## VIII. *Pending Motion*

Amon asks us to strike a portion of Razorback's reply brief. In light of our disposition of the case, we deem the motion moot.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for appellants.

*The Buckley Firm*, by: *William A. Buckley III*, for appellee.