# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-595

|  |  |
|---|---|
| | Opinion Delivered: February 1, 2017 |
| MICHAEL HOWARD<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66PR-16-170] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | HONORABLE ANNIE HENDRICKS, JUDGE |
| APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Michael Howard appeals from the Sebastian County Circuit Court's order granting the Arkansas Department of Human Services (DHS) long-term protective custody. On appeal, appellant contends that (1) DHS presented no evidence that appellant's family were unable to care for him and that DHS failed to notify his family as required; and (2) it was reversible error for the circuit court to find by clear and convincing evidence that institutional care was the least restrictive alternative. We affirm.

On March 25, 2016, DHS filed a petition for emergency custody, alleging that appellant was an endangered or impaired adult and that although he had a son and a sister, he did not have a primary caregiver. A seventy-two-hour hold was placed on appellant after Adult Protective Services (APS) had received a hotline call stating that appellant was a victim of self-neglect. Appellant was admitted to Mercy Hospital after he was found at home on the floor but could not get up on his own. He was found with dried feces on his

pants and legs, and the entrance to his home had large holes and broken boards. At the hospital, appellant had a 0.01 blood-alcohol level, was disoriented, and believed that he had a completely different identity. The attending doctor diagnosed appellant with atrial fibrillation and diabetes and opined that he was incapable of managing his medications and needed twenty-four-hour care and supervision. Appellant left his hospital room within an hour after DHS placed an emergency hold, and security later found him sitting in the waiting room of the emergency room.

The circuit court granted an ex parte order for emergency custody, and a subsequent probable-cause order was entered. The probable-cause order specifically noted that Dr. Anower diagnosed appellant with possible alcohol-related psychosis and cirrhosis, as well as diabetes mellitus type II. Furthermore, the order noted that Dr. Anower stated that appellant was unable to adequately manage his medications and that he lacked the ability to protect himself from abuse, neglect, or exploitation, if left alone.

A hearing regarding long-term protective custody was held on April 14, 2016, and two affidavits were admitted into evidence, one from Louise Spaunhurst, a registered nurse with APS, and the other from Dr. Philip Elangwe, appellant's primary-care physician. Spaunhurst's affidavit stated that appellant had been diagnosed with several conditions that needed continuous care. At that time, she explained that appellant had no income or medical insurance, that there were no utilities at his prior home, that appellant was residing at Fort Smith Health & Rehab, and that appellant continued to prefer to be called by the name Apollo Griswald, his self-assumed alternative identity. Spaunhurst further opined in her affidavit that appellant lacked the capacity to comprehend the nature and consequences

of returning to his former living arrangements and that he lacked the ability to meet his activities of daily living without twenty-four-hour care. She recommended that appellant remain in protective custody and that he continue to be placed in the least restrictive environment to meet his needs.

Dr. Elangwe likewise recommended that appellant remain in protective custody in his affidavit. Dr. Elangwe noted that appellant had alcohol encephalopathy, cirrhosis of the liver, and a personality disorder. He further recommended that appellant needed twenty-four-hour supervision and a structured, secure unit with medication management and safety checks.

Spaunhurst testified at the hearing similarly to her affidavit. She explained that she had been assigned by APS to appellant's case. She testified that she had contacted the phone numbers that she had for appellant's son, George Howard, and appellant's sister, Donna Dahlem, but she explained that no one had returned her phone calls or voice messages. She further testified that she was unaware of any other family members and that neither appellant's son nor his sister would be capable of providing the level of care that appellant would need. She additionally indicated that appellant's prior residence was unsafe and that there was a possibility that it needed to be condemned. Thus, based on her investigation, it was her recommendation that appellant remain in protective custody and that appellant's placement in an institution was the least restrictive environment.

Appellant testified on his own behalf at the hearing. Some of his statements were indiscernible, but he complained that he did not like his current placement and that he wanted to return to his prior residence. That said, he admitted that he had been feeling

better and that he had not been drinking. At the conclusion of the hearing, appellant specifically objected to his institutionalized placement as being the least restrictive environment. However, the circuit court orally found that his placement was the least restrictive environment that met his needs.

The circuit court subsequently filed a written order for long-term protective custody, specifically making the following relevant findings:

> 3. The Court finds that Respondent, having been found endangered or impaired, lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his health or safety. More specifically, Mr. Howard has been diagnosed with alcohol encephalopathy and cirrhosis of the liver, with a secondary diagnosis of personality disorder. Further, the Respondent is not able to take care of himself or protect himself from abuse, exploitation, or other maltreatment, including self-neglect, due to these conditions. Dr. Elangwe recommends 24 hour monitoring in a secure and structured unit.
>
> 4. That there is no known caregiver currently responsible for the protection, care or custody of the Respondent that is willing or able to provide the Respondent with the level of 24/7 professional nursing care and supervision that the Respondent requires.
>
> 5. The Court finds by clear and convincing evidence that the Respondent is in need of placement. The Arkansas Department of Human Services is awarded long term custody of Respondent. Placement of the Respondent shall be at an appropriate facility in the least restrictive environment that best meets the Respondent's needs. At this time, there are not sufficient services available to the Respondent for non-institutionalized care or court-ordered protective services to provide a viable alternative to protective custody. Specifically, the Court relies on the Petitioner's court report; the affidavit of Phillip Elangwe, M.D.; the testimony of Louise Spaunhurst, R.N. APS worker; and the other testimony presented.

This appeal followed.

## I. *Standard of Review*

Our standard of review for probate orders is well established. This court reviews probate proceedings de novo, and the decision of the probate court will not be disturbed

unless clearly erroneous, giving due regard to the opportunity and superior position of the probate court to determine the credibility of witnesses. *Adams v. Ark. Dep't of Health & Human Servs.*, 375 Ark. 402, 291 S.W.3d 172 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

The purpose of the Adult Maltreatment Custody Act (the Act) is to:

> (1) Protect a maltreated adult or long-term care facility resident who is in imminent danger; and
>
> (2) Encourage the cooperation of state agencies and private providers in the service delivery system for maltreated adults.

Ark. Code Ann. § 9-20-102 (Repl. 2015). To that extent, the Act gives jurisdiction to the probate division of the circuit court over proceedings for custody, temporary custody for purposes of evaluation, court ordered protective services, or an order of investigation pursuant to the Act. *See* Ark. Code Ann. § 9-20-108(a)(1). Pursuant to the Act, the probate court may order long-term custody with DHS if the court determines that:

> (1) The adult has a mental or physical impairment or lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his or her health or safety;
>
> (2) The adult is unable to provide for his or her own protection from maltreatment; and
>
> (3) The court finds clear and convincing evidence that the adult to be placed is in need of placement as provided in this chapter.

Ark. Code Ann. § 9-20-117(c).

II. *Notice to Family*

Appellant first contends on appeal that DHS presented no evidence that his family were unable to care for him and that DHS failed to notify his family as required. He more specifically argues that DHS did not sufficiently prove that there was no willing caregiver to provide him with the care that he needed because DHS did not notify his next of kin as required, and therefore, he argues that the circuit court's finding that he needed placement was not supported by clear and convincing evidence. We disagree.

Arkansas Code Annotated section 9-20-111 requires that notice of the long-term-custody hearing be given in relevant part to "[t]he next of kin of the respondent whose names and addresses are known to the petitioner." Appellant argues for the first time on appeal that this notice requirement was not met. However, it is well established that failure to raise an issue before the trial court is fatal to an appellate court's consideration on appeal. *Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, 413 S.W.3d 542. Moreover, section 9-20-111 only requires notice to "*names and addresses . . .* known to the Petitioner." (Emphasis added.) Spaunhurst testified that she had contacted appellant's family through the phone numbers that she had for them. Despite her attempts to contact appellant's family, no one returned her phone calls or attempted to assist in appellant's care. There was no evidence that DHS had any addresses for any family members, and Spaunhurst testified that she did not know of any family members other than the two she had attempted to contact by the phone numbers that she had. Additionally, DHS presented evidence that appellant had been left alone in his home when he was removed and that he required twenty-four-

hour care. As such, we cannot find that the circuit court's finding that appellant needed placement was clearly erroneous, and we affirm on this point on appeal.

III. *Least Restrictive Alternative*

Appellant additionally contends that it was reversible error for the circuit court to find by clear and convincing evidence that institutional care was the least restrictive alternative. Appellant does not dispute that he needs twenty-four-hour care, but he argues that DHS did not meet its burden to prove that institutional care is the least restrictive alternative under section 9-20-117(d) that best meets his needs because the circuit court limited his inquiry into his assets and benefits. Thus, appellant suggests that he may have had further assets that would have allowed him to provide for his care in a noninstitutionalized environment. His argument, however, is without merit.

After reviewing the record of the hearing, appellant cross-examined Spaunhurst regarding his assets. After Nurse Spaunhurst testified that "the only asset available to [appellant] to pay for his care [was] his house," appellant inquired whether he had any other assets. At that point, DHS objected to appellant's question, arguing that it was outside the scope of representation pursuant to Arkansas Code Annotated section 9-20-108. The circuit court ruled, "[I]t is, but she's already answered that so let's move on." At the end of her cross-examination, Spaunhurst testified without objection that she was "not aware that he [had] any [other] assets." Therefore, she explained that she had already completed a Medicaid long-term-care application that would pay for his care once it was approved. Subsequently, appellant testified during his direct examination without objection that he

believed that he owned an "Iowa bank account" and "a ranch in Sherwood that's deeded in [his] correct name."

It is well settled that the decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *Razorback Cab of Fort Smith, Inc. v. Amon*, 2016 Ark. App. 352, 498 S.W.3d 346; *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. Furthermore, this court will not reverse without a showing of prejudice, as prejudice is not presumed. *Cheney*, *supra*. Exclusion of evidence is not prejudicial if the same evidence was introduced through another source and was before the trier of fact for its consideration. *Razorback Cab of Fort Smith*, *supra*. Assuming *arguendo*, that the circuit court improperly excluded additional evidence of appellant's assets during Spaunhurst's cross–examination, any exclusion was at most harmless error because appellant testified without objection that he had additional assets. *Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996).

Thus, after hearing all the evidence, the circuit court found by clear and convincing evidence that appellant's placement in an institution was the least restrictive alternative that met his needs. Arkansas Code Annotated section 9-20-117(d)(1) requires the circuit court to determine "the least restrictive alternative to be considered proper under the circumstances, including a finding for noninstitutional care if possible." Here, appellant's physician and Spaunhurst recommended institutional care. Appellant needed continuous care, and evidence was presented that his home was unsafe for his return. Furthermore, there were no willing family members to provide him with the necessary level of care. Although appellant's testimony at the hearing suggested that he believed he had additional

assets to provide for his care, we defer to the circuit court's superior position regarding the credibility of witnesses. *Adams*, *supra*. Thus, we cannot find that the circuit court's findings regarding placement were clearly erroneous.

Finally, to the extent appellant now attempts to make a constitutional due-process argument that his appointed counsel was somehow limited in ascertaining his assets based on section 9-20-108 and that "this case should be reversed and remanded so that the constitutional safeguards are in place," we cannot reach the merits of this claim because it was never raised or ruled on below. *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005). This court has made it abundantly clear that it will not consider an argument, even a constitutional one, raised for the first time on appeal. *Id.*; *Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 506, 471 S.W.3d 227; *Tuck v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 468, 442 S.W.3d 20. Furthermore, we do not consider on appeal assignments of error unsupported by convincing argument or authority, unless it is apparent without further research that the point is well taken. *Jones*, *supra*.

Affirmed.

VIRDEN, J., agrees.

VAUGHT, J., concurs.

**LARRY D. VAUGHT, Judge, concurring.** While I agree that this case must be affirmed for the reasons stated in the majority's opinion, I write separately to address troubling issues that are likely to recur. Today, our court hands down this case and three others with similar facts and almost identical legal challenges. *Brown v. Ark. Dep't of Human Servs*, 2017 Ark. App. 69 (February 1, 2017); *Johnston v. Ark. Dep't of Human Servs.*, 2017

Ark. App. 51 (February 1, 2017); and *Nicholson v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 53 (February 1, 2017). In each case, due to failures by the attorneys and court below, we are unable to reach legal issues about which we have grave concerns. As a result, meaningful due process may have been effectively denied to these four appellants, and due to our limited standard of review, we are unable to address the issues.

While the purpose of the Adult Maltreatment Custody Act, Arkansas Code Annotated section 9-20-101 (Repl. 2015) et seq., is to protect a maltreated adult and to encourage cooperation between state agencies and private-care providers, due process is still required, the law must be followed, and the hearing must be fair. In this case, as in each of the others, the appellant argues that, although section 9-20-111(d)(2) requires DHS to give notice of the hearing to the next of kin of the adult, this was not done. In none of these cases did DHS put forward any evidence to demonstrate that notice had been provided. Unfortunately, we could not reach the merits of this issue because, in each case, it was not preserved for appellate review. This is a complete failure of due process. DHS failed to give notice as required by statute, the defense attorney failed to object and preserve the error for review, and the trial court failed to protect its record by requiring compliance with a mandatory statute.

Likewise, in each of these cases, the attorney for the adult attempted to introduce evidence of his or her assets in order to determine if confinement in an institution was the least restrictive alternative for care. However, in each case, the trial court sustained DHS's objections to such testimony based on its finding that section 9-20-108 limits representation to only the issue of the adult's liberty interest. However, again, we have been prevented

from addressing this important issue because the defense attorney failed to preserve it for appeal and failed to proffer the excluded financial evidence, which is necessary in order to establish prejudice from its exclusion.

These cases present important issues worthy of meaningful appellate review. The fact that we have repeatedly been prevented, due to lack of preservation, from addressing them indicates a systemic problem. Therefore, I write to put the bench and bar on notice that the laws designed to protect Arkansas's most vulnerable adults require more than rushed, perfunctory proceedings with foregone conclusions. Simple due process mandates a meaningful hearing with notice to the family, a zealous representation of the impaired adult, and the opportunity to present all relevant evidence. The members of the bench and the bar engaged in these matters have an ethical responsibility to protect the best interest of the adults subject to such proceedings. At the very least, that means preserving their right to appellate review.

*Dusti Standridge*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.