MIKE MURPHY, Judge
Judith Stegall appeals the April 13, 2017 order of the Washington County Circuit Court ordering her into long-term protective custody of the Arkansas Department of Human Services (DHS). On appeal, Stegall argues that (1) probable cause did not exist to place her in the long-term custody of DHS and (2) the institutional care she was receiving was not the least-restrictive environment to meet her needs. We affirm.
On March 2, 2017, DHS filed a petition for emergency custody, alleging that Stegall is an endangered or impaired adult pursuant to the Adult Maltreatment Custody Act. DHS had received a referral that Stegall's heat and electricity were turned *189 off, she had lost her medications, forgot to eat and was losing weight, and had a history of alcohol abuse. The affidavit included with the petition for emergency custody further alleged that an investigator for adult protective services made three visits to Stegall's home in mid-February and administered two mini mental-status exams. Stegall scored a 26/30 both times.[1] A seventy-two-hour hold was placed on Stegall for cognitive assessment. An ex parte order for emergency custody was entered that same day.
A probable-cause hearing was held on March 7, 2017. At the hearing, DHS offered an affidavit of Stephen Dollins, a board-certified psychiatrist, who had evaluated Stegall five days prior. In his affidavit, he provided that Stegall "has major vascular neurocognitive disorder, moderate to severe stage, and that the least restrictive environment is assisted living with a dementia unit or nursing home care-needs 24 hour care." DHS also introduced a neuropsychological evaluation by another doctor, Dr. Chambers, which provided that Stegall required "24/7 assistance." Stegall's daughter testified that she was working on getting her mother into an assisted-living facility closer to her in Missouri.
The trial court found that the DHS worker was very credible, and it gave significant weight to the affidavit and exhibit of the two doctors who both diagnosed Stegall with dementia and recommended around-the-clock care. It found that probable cause existed to continue placement with DHS and ordered DHS to place Stegall at "an appropriate facility that meets [her] needs" and to provide her with "physical, mental or emotional care as required in the opinion of a duly authorized or licensed physician."
A long-term-care hearing was held on April 13, 2017. The testimony at the second hearing was mostly duplicative of the first. The DHS investigator testified that a third doctor, Dr. Miller, evaluated Stegall and also recommended "24/7 nursing care in a long-term care facility." He testified that Dr. Miller also diagnosed Stegall with "major vascular neurocognitive disorder and behavioral disturbance-moderate stage."
Stegall also testified. She said that she would like to either go home or be let out to go live in an assisted-living facility nearer to her daughter. She testified that she would like some crochet supplies and that if DHS was planning on taking her into custody that it spend its own money to do it, and not hers. She said that she thought she was stable and capable of taking care of herself. She recognized that she may need some assistance in the future, but she said that, for right now, she was fine. She said that she was looking forward to her son getting out of jail in June and that he could come live with her when he got out. She testified that she could not remember why he was in jail.[2]
At the conclusion of the hearing, the trial court found probable cause existed to grant long-term custody of Stegall to DHS. This appeal follows.
The standard of review for probate matters is de novo, and this court will not reverse the trial court's findings unless they are clearly erroneous, giving due regard to the opportunity and superior position of the probate court to determine the credibility of witnesses.
*190 Howard v. Ark. Dep't of Human Servs. , 2017 Ark. App. 68, at 4, 512 S.W.3d 676, 679. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Id. at 5, 512 S.W.3d at 679.
The purpose of the Adult Maltreatment Custody Act is to (1) protect a maltreated adult or long-term-care facility resident who is in imminent danger; and (2) encourage the cooperation of state agencies and private providers in the service-delivery system for maltreated adults. See Ark. Code Ann. § 9-20-102 (2017); Howard , 2017 Ark. App. 68, at 5, 512 S.W.3d at 679-80. The Act gives jurisdiction to the probate division of the circuit court over proceedings for custody, temporary custody for purposes of evaluation, court-ordered protective services, or an order of investigation pursuant to the Act. See Ark. Code Ann. § 9-20-108(a)(1) ; Howard , 2017 Ark. App. 68, at 5, 512 S.W.3d at 680.
The probate court may order long-term custody with DHS if the court determines that (1) the adult has a mental impairment, a physical impairment, or lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to her health or safety; (2) she is unable to provide for her own protection from maltreatment; and (3) the court finds clear and convincing evidence that the adult is in need of placement as provided in the Act. Ark. Code Ann. § 9-20-117(c) ; Howard , 2017 Ark. App. 68, at 5, 512 S.W.3d at 680. Adult maltreatment, as defined, includes abuse, exploitation, neglect, physical abuse, or sexual abuse of an adult. Ark. Code Ann. § 9-20-103(2) ; Doran v. Ark. Dep't of Human Servs. , 2014 Ark. App. 505, at 4, 442 S.W.3d 868, 871.
Stegall first argues that there was no probable cause to place her in the long-term custody of DHS based on a poor memory, not being as politically educated as other people, or not knowing when her son may or may not parole out of prison. We disagree. The trial court specifically found in its order for long-term protective custody that Stegall
lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to her health or safety and [Stegall] has a mental or physical impairment that prevents [Stegall] from protecting herself from imminent danger to her health or safety. More specifically: is diagnosed with major vascular neurocognitive disorder, lacks the capacity to live independently and requires twenty four hour care.
In making this determination, the evidence that supports this decision includes three physician affidavits all diagnosing Stegall with dementia and recommending long-term care with DHS; testimony from a DHS investigator about his interactions with Stegall and her scores on a mini mental-status exam; and Stegall's own testimony, including her testimony that she could not remember when her son would be paroled but that, despite being in jail for abusing her, he could come live with her when he got out. The court expressed concern with Stegall's ability to protect herself from harm and her ability to take care of herself and remember her medications. We are not left with a definite and firm conviction that a mistake has been committed.
Stegall next argues that it was reversible error for the court to find that institutional care was the least-restrictive alternative. Arkansas Code Annotated section 9-20-117(d)(1) provides that "[t]he court shall make a finding in connection with the determination of the least restrictive alternative to be considered proper *191 under the circumstances, including a finding for noninstitutional care if possible."
Stegall contends that a nursing home was not the least-restrictive alternative and that she should have been placed in an assisted-living facility instead. At the long-term-placement hearing, there was a discussion about DHS's ability to place Stegall in an assisted-living facility. The investigator was candid with the court: "So what we've got is we've got medical recommendations that acknowledge a range of debilitation. However, we have no solution that offers a range of supervision." Assisted-living facilities or alternative-care options like Home Instead Senior Care, the investigator explained, did not fall under DHS's umbrella of services it provided or paid for, and it did not have the ability to supervise them.
In its order, the court found
that [Stegall] is in need of placement. [DHS] is awarded long term custody of [Stegall]. Placement of [Stegall] shall be at an appropriate facility in the least restrictive environment that best meets [her] needs. At this time, there are not sufficient services available to [Stegall] for non-institutional care or court-ordered protective services to provide a viable alternative to protective custody.
In her reply, Stegall argues that multiple providers indicated that Stegall could benefit from assisted living and that the only reason Stegall is in a nursing home instead of an assisted-living facility is because DHS is unwilling to pay for it. She contends that the state's inability to pay for services does not relieve it from finding the least-restrictive placement. Stegall's argument, however, ignores that the court did not explicitly order nursing-home care over assisted living for Stegall; instead it ordered DHS to place Stegall at an appropriate facility in the least-restrictive environment that best meets her needs. Furthermore, two of three physicians averred that nursing-home care was a least-restrictive-placement option for Stegall. The trial court weighing the evidence differently than appellant wanted it weighed is not reversible error. Cox v. Ark. Dep't of Human Servs. , 2015 Ark. App. 202, at 11, 462 S.W.3d 670, 677. To reverse on this basis would require this court to act as a super fact-finder or second-guess the trial court's credibility determination, which is not our function. Id. Thus, we hold that the trial court's findings regarding placement were not clearly erroneous.
Affirmed.
Virden and Klappenbach, JJ., agree.

A 27/30 is considered passing. Questions include "who is the current president," "spell the word 'world' forward and backward," and "what day of the week is it."

He was in jail for committing domestic battery against Stegall.