SLIP OPINION

Cite as 2014 Ark. App. 676

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-516

| | |
|---|---|
| CHRISTIAN WRIGHT<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** December 3, 2014<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. JV-2012-578]<br><br>HONORABLE VICKI SHAW COOK, JUDGE<br><br>REVERSED; MOTION TO DISMISS DENIED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Christian Wright appeals the order filed March 21, 2014, in which the Garland County Circuit Court terminated his parental rights to his presumptive daughter, S.W. Appellant submits that the evidence does not support a clear and convincing finding by the circuit court that he had any parental rights to terminate, specifically as alleged or otherwise, and that the circuit court's ruling is clearly erroneous and must be reversed and dismissed as to him. We agree.

Additionally, we deny appellee Arkansas Department of Human Services' (DHS) motion to dismiss appellant's appeal as moot. Although it is undisputed that appellant was determined not to be S.W.'s parent, under any legal rationale, DHS asked the circuit court to terminate nonexisting parental rights, and the circuit court did exactly that. This court recognized in *Jordan v. Arkansas Department of Human Services*, 2011 Ark. App. 592, that the

SLIP OPINION

"onus" of an involuntary termination is much different than that of a consent because only an involuntary termination can serve as automatic grounds for termination to another child the parent currently has or even might have in the future. *Id.* (citing Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*4*) (Supp. 2011)). The issues raised in appellant's appeal are not moot and should not be disposed of procedurally.

We also note that the Arkansas Supreme Court recently reiterated its longstanding holding that, in a civil bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Bohannon v. Robinson*, 2014 Ark. 458, __ S.W.3d __. *See also Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303; *Searcy Farm Supply, LLC v. Merchs. & Planters Bank*, 369 Ark. 487, 256 S.W.3d 496 (2007); *Oates v. Oates*, 340 Ark. 431, 10 S.W.3d 861 (2000); *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993); *Sipes v. Munro*, 287 Ark. 244, 697 S.W.2d 905 (1985); *Bass v. Koller*, 276 Ark. 93, 632 S.W.2d 410 (1982). Accordingly, we hold that appellant has not waived his challenge to the sufficiency of the evidence supporting the circuit court's findings despite the lack of a motion to dismiss at that level.

On September 19, 2012, DHS took a seventy-two-hour hold on Megan Crawley's two children, B.C. and S.W., based on allegations that, not only was Ms. Crawley using marijuana, she was purposely exposing her children to marijuana in an effort to calm them. Her home was found to be environmentally unsuitable for children, she was hostile with the DHS caseworker when confronted, and she tested positive for THC upon further investigation prior to the children's removal.

Ms. Crawley waived the issue of probable cause at the hearing on September 28, 2012. In that probable-cause order, two putative fathers were named, Thomas Johnson and James Lane, with Mr. Lane specifically listed as S.W.'s putative father.

It is undisputed that appellant was incarcerated for the entire pendency of this case. Appellant was not living in the home from which the children had been removed, and he was not named as a party on DHS's petition for emergency custody and dependency-neglect. Although appellant was not listed in the probable-cause order, the emergency petition was served on him on October 12, 2012.

Appellant was given notice of the adjudication hearing and was listed as the legal father of S.W. on the October 12, 2012 notice. Appellant, however, was not recognized as a party at the adjudication hearing on November 16, 2012, but was merely listed in the adjudication and disposition order as being both present at the hearing and as the legal father of S.W. The circuit court made a finding that appellant was "not the biological father of the juvenile, [S.W.]," but in the very same order later referred to appellant as S.W.'s "legal father." Appellant was still not listed as a party in the case, with James Lane being listed as the legal/putative father of S.W. The circuit court appointed an attorney for appellant in an order filed on December 3, 2012, in which appellant was referred to as the putative father of S.W., but was still not named as a party to the case.

On February 1, 2013, the circuit court ordered DNA testing of appellant to determine if he was the father of either S.W. or B.C. Appellant is listed in the introductory paragraph of that order as the putative father of B.C., with no reference to S.W., and was still not listed

in the heading as a party to the case. At the review hearing on May 23, 2013, appellant did not appear, and he still was not listed as a party to the case. Neither appellant nor the previously ordered DNA paternity testing was mentioned in the resulting review order.

The permanency-planning hearing was held on August 22, 2013, and by this time Ms. Crawley had given birth to another child by another man, Sebastian Sandoval.[1] On the permanency-planning order file-marked August 23, 2013, appellant is listed as a party for the first time, this time as the legal/putative father of B.C. The circuit court found that (1) all three putative fathers were represented by the same lawyer and representation would continue; (2) the goal of the case was adoption; (3) none of the three putative fathers had established significant contacts with the juveniles, and parental rights had not attached; and (4) the due-process requirement of appointment of counsel for putative parents in a termination hearing had been met.

DHS was ordered to provide the Office of Child Support Enforcement Unit with a copy of this order immediately upon receiving a file-stamped copy of the same and to arrange for DNA testing of juveniles, S.W. and B.C., on or before September 23, 2013. DHS had been ordered by the circuit court to provide this service at the February 1, 2013 adjudication hearing seven months prior. Appellant had remained at all times incarcerated and was accessible for testing.

---

[1]That newborn had been taken into care, paternity had been established as to Mr. Sandoval, and on May 23, 2013, that baby had been adjudicated dependent–neglected.

Ms. Crawley's rights were terminated on November 1, 2013, pursuant to an order entered December 19, 2013. Appellant was still listed as a legal/putative father of only B.C. The order reads that appellant was not present before the circuit court. The circuit court found in Ms. Crawley's termination order that the placement plan was reunification with the father(s) with an alternate goal of adoption. The style of the case was changed to omit Ms. Crawley and to list the three putative fathers, still listing appellant as a legal/putative father of only B.C.

DHS filed its petition for termination of parental rights on January 15, 2014, this time listing appellant, along with Mr. Lane, as the legal/putative fathers of S.W., but not B.C., and alleging that appellant was the presumptive legal father to S.W. The petition noted that previously introduced DNA testing proved that there is a zero-percent probability that appellant is S.W.'s biological father.

A hearing on the petition was set for March 20, 2014, and the order was entered on March 21, 2014, terminating appellant's parental rights with respect to S.W. Appellant filed a timely notice of appeal from that order on April 3, 2014, and this appeal followed.

Arkansas Code Annotated section 9–27–303(40) (Supp. 2013) provides:

> "Parent" means a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9–10–120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile . . . .

This court reviews termination orders de novo. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008).

5

DHS alleged as grounds for termination in its petition that, pursuant to Arkansas Code Annotated section 9-27-341(c)(2)(A)(ii), if no legal rights had been established, a putative parent must prove that significant contacts existed with the juvenile in order for the putative rights to attach. Specific to appellant, DHS alleged grounds for termination in its petition under section 9-27-341(b)(3)(B)(iii) that

> [t]he presumptive legal father is not the biological father of the juvenile and the welfare of the juvenile can best be served by terminating the parental rights of the presumptive legal father. Specifically, the presumptive legal father of juvenile [S.W.] is Christian Wright. DNA testing of juvenile [S.W.] and Christian Wright previously introduced into evidence during this matter has proven there is a zero percent probability of paternity regarding juvenile [S.W.] and Christian Wright and he is not the biological father. Further, Christian Wright has not had any contact with juvenile [S.W.] and has had no relationship with [S.W.] Juvenile [S.W.] is three years old, she has spent almost half of her life in foster care, and she is in need of permanency. Mr. Wright is currently incarcerated and he is not in a position to provide permanency for juvenile [S.W.] It would be in her best interest to terminate paternal parental rights in order for her to achieve permanency.

DHS also alleged specifically as to appellant under section 9-27-341(b)(3)(B)(viii) that he was incarcerated and not in a position to provide permanency for S.W. It was alleged that there was potential harm to S.W. if she were returned to appellant's custody in that she would spend more time in foster care due to his incarceration and homelessness, could be exposed to illegal substance use by the parent, would lack stability, and could be neglected. Of the preceding allegations, only incarceration was evinced as to appellant.

From the inception of this case, the circuit court's determination of appellant's status and standing was inexcusably unclear. The following exchange took place at the termination

hearing among appellant's trial counsel,[2] her colleagues, and the circuit court regarding testimony that a "father" purportedly gave during the probable-cause hearing where appellant was not a party and was unacknowledged and unrepresented by counsel at the time:

| | |
|---|---|
| ATTORNEY FOR DHS: | And too, Your Honor, Mr. Christian Wright, this is kind of an unusual case in that originally I believe there was an Order of Paternity, but then DNA testing was done. It came back zero percent probability and then I think at probable cause we actually entered an order undoing the Paternity Order; is that correct? |
| THE COURT: | Um-hmm. |
| ATTORNEY FOR FATHERS: | That's correct, Your Honor, initially in a child support matter by default paternity was entered. *The mother and father testified at probable cause.*[3] You undid that Child Support Paternity Order. Then later we decided to go ahead and do DNA testing, which did come back negative on both children as to Mr. Wright. (Emphasis added.) |
| THE COURT: | So I really think it's moot concerning Mr. Wright. |
| ATTORNEY FOR DHS: | Right. And one of the grounds for termination, which the Court will hear about when we take testimony, is that the provision that provides the presumed legal father is not the biological father and if it's in the best interest to terminate then we terminate so – |

---

[2]Trial counsel for appellant had not yet been appointed at the probable-cause stage of the case but was present and representing the two originally listed putative fathers in the matter.

[3]According to the record, at the time of the probable-cause hearing, appellant was not present and had not yet been served with the emergency petition for dependency-neglect or the probable-cause order.

THE COURT:                    Very well . . . .

When the circuit court in effect voided the default paternity order and determined that appellant was not the biological father of either S.W. or B.C., all references and connections to appellant should have been removed from the case. The effect of changing his status, then, to that of "presumptive legal father" effectively opened him up to unfettered attack under the termination-of-parental-rights statute.[4]

DHS alleged in its termination petition that, under section 9-27-341(b)(3)(B)(iii), the presumptive legal father is not the biological father of the juvenile, and the welfare of the juvenile can best be served by terminating the parental rights of the presumptive legal father. The caseworker subsequently testified to the contrary regarding appellant that "[a]t the very beginning of the case we believed him to be the presumptive legal father. We now know, of course, that he's not the biological father." The DNA paternity testing conclusively proved that appellant was not the biological father of S.W.; the circuit court found this fact and then rescinded the order of paternity previously entered by another court. It was the circuit court that removed any question about appellant's legal status as to S.W.; it simply was not presumptive under any definition. Moreover, appellant could not possibly be the presumptive legal father or even a putative father.[5]

---

[4]Appellant was not represented by counsel when the court changed his legal status. He was not even acknowledged as a party, yet his legal status was manipulated to fit the allegations of this case.

[5]Section 9-27-303(47) defines "putative father" as any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile. DHS pleaded and

Appellant's parental rights were terminated based upon a presumptive-legal-father section of a statute constructed for parties not consistent with appellant's status. This court has reversed and remanded on this type of issue in the past. *See Williams v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 622, at 5 (citing *Jones v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 632).

> [T]he courts may not alter or disregard the language of a legislatively enacted ground for termination, and "if the ground, as worded, does not fit the facts of the case, it should not be used."

Appellant claims that the circuit court did not treat him in a manner by which he could conceivably be construed as a party, let alone a parent—legal, presumptive legal, putative or otherwise. He was not a proper party to proceed against with a termination-of-parental-rights action. The evidence does not support a clear and convincing finding by the circuit court that appellant had any parental rights to terminate, specifically as alleged or otherwise, and we hold that the circuit court's ruling is clearly erroneous and must be reversed and dismissed as to appellant.

Reversed; motion to dismiss denied.

WALMSLEY and VAUGHT, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.

---

the circuit court found that no putative rights attached, as addressed, *infra*.