
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–550

| | |
|---|---|
| BENNIE WHITEHEAD<br>APPELLANT | **Opinion Delivered** January 27, 2016 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. JN-2014-1113] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Bennie Whitehead appeals an order entered in the Pulaski County Circuit Court on May 27, 2015, that terminated his parental rights. We reverse and remand.

### I. *Facts*

On August 14, 2014, the Pulaski County Circuit Court entered an ex parte order for emergency custody of M.B.1 and his twin sister M.B.2 (born 8/1/14) due to reports that the mother, Tawana Bryles, was mentally unstable. No father was listed on the children's birth certificates, and, at the time of the order, the father's identity was unknown. On August 21, 2014, the circuit court entered a probable-cause order that named Bennie Whitehead as the putative father of the twins.[1] In its order, the circuit court advised Whitehead that he had no

---

[1] In April 2015, DNA test results showed that Whitehead was the father of only one of the twins, M.B.1. Until that time, the parties involved in the case assumed that Whitehead was the only putative father. After this discovery, a man known only as "Sunny" was named

right to an attorney at that time because the juveniles had not been removed from his custody, and the circuit court directed the Department of Human Services (the Department) to serve Whitehead with a copy of the petition and summons. Whitehead was served with a summons on September 23, 2014.

On September 25, 2015, the circuit court held a hearing on the matter, and an adjudication and disposition order was entered on October 13, 2015. The order directed the Department, Bryles, and Whitehead to "take appropriate steps to resolve the issue of paternity." In the order, the Department was given the following instruction: "make all referrals and ensure that the referrals are sent to the appropriate provider(s) within ten (10) days." The circuit court also noted that "Putative father, Bennie Whitehead, does not want to participate in any services until he has had a DNA test and is found to be the father of the juveniles."

A review hearing took place on January 29, 2015, and the circuit court entered its written order on February 5, 2015. In its order, the circuit court found that Whitehead was in compliance with its order and the case plan, as was the Department; however, the circuit court noted that the Department had testified that no DNA test had been performed at that time but that Whitehead's DNA test was set for February 20, 2015. In its order, the circuit court denied Whitehead's request to visit the children, and it found that "if the DNA test results determine Mr. Whitehead is the juveniles' biological father; he shall visit the juveniles, as arranged by him and DHS. Those visits shall be supervised by DHS and shall occur once

---

a putative father, and he is not involved in this appeal.

each week for one (1) hour. . . ." The circuit court also found that "Mr. Whitehead, the putative father, has not established significant contacts with the juvenile; therefore, putative rights do not attach, and he is not entitled to a court appointed attorney for representation at the termination of parental rights hearing. He is advised of the right to hire an attorney for the termination of parental rights adjudication." The circuit court directed the Department to file the termination-of-parental-rights petition during the week of February 20–27, 2015, (the same week during which Whitehead's DNA test was scheduled to occur), and it set the date for the termination hearing for May 7, 2015.

The Department filed the petition for termination on February 24, 2015, four days after Whitehead's DNA test had been performed. The Department noted that Whitehead's parental rights had not been established and that the circuit court found that Whitehead had not proved significant contacts; therefore, Whitehead's parental rights as a putative father had not attached. The Department also requested that Whitehead's parental rights be terminated along with Bryles's due to subsequent factors that had arisen since the case had begun. Specifically, the Department alleged that Whitehead had been ordered to establish his paternity, and he had not complied with this order. The Department also alleged that "Mr. Whitehead has stated that he does not want services until he has scientific evidence that the children are biologically his. He has manifested the incapacity or indifference to remedy the subsequent factors or rehabilitate his circumstances."

The Department filed an amended petition for termination of parental rights on April 24, 2015. In its petition, the Department alleged that Whitehead had delayed the DNA testing, though the Department did not state how Whitehead was responsible for the delay.

The Department also alleged that Whitehead had shown indifference to remedy the subsequent factors. The Department alleged that Mr. Whitehead had failed to keep in contact with the Department at the time the amended petition was filed. In the petition, the Department stated that "aggravated circumstances" grounds also existed as to Whitehead:

> Mr. Whitehead delayed providing DNA testing in this case which has resulted in him becoming a possible participant at the 11th hour. At the time of this filing, Mr. Whitehead has not kept in contact with the Department in order to do everything he can to get his child placed with him.

The termination hearing was held on May 20, 2015. The circuit court acknowledged that Whitehead had been present at all of the hearings. The circuit court noted that he had requested that he be offered no services because he wanted to wait and see if a DNA test proved that he was the father of the children. The court stated that because he refused services, his request for visitation was denied until he was determined to be the biological father. The circuit court found that Whitehead had not established significant contact with the child, therefore his putative rights had not attached.

The attorney ad litem urged the court to proceed carefully as to the issue of how Whitehead's rights were disposed of, if he had any:

> [W]e do believe that he has had enough contact that we would want to proceed with caution and terminate any rights that he might have with the two grounds that Ms. Johnson mentioned. Of course, the court could always find that no significant contacts have attached and dismiss him that way–

In response, the court stated,

> The fact that he is the biological father with DNA testing does not elevate him to the right of a parent. He's not a parent yet; he's not a legal father until there's a determination of paternity, that's with a court order or a paternity acknowledgment. He doesn't have any one of those that I know of and he may, and that's what I need to find . . . .

The court questioned Whitehead to resolve the question of whether he had established either paternity or significant contact with the child. Whitehead explained that he had taken the DNA test and that he had received the results "a month or two ago." Whitehead testified that when he had received the notification, he had arranged visitation, and he had taken advantage of each of the three visits he had been allotted.

The circuit court asked Whitehead if he had an order of paternity showing that he was the legal father. Whitehead attempted to present the court with his DNA test results, and the circuit court informed him that a DNA test was insufficient and that a court order of paternity was necessary.

The Department moved that Whitehead be dismissed from the case based on the circuit court's finding that he had not established significant contacts such that parental rights would attach. The circuit court stated from the bench that, as long as it found no putative rights attached, dismissal was appropriate. The circuit court noted that the mother's rights had already been terminated in a separate order; therefore, testimony concerning the best interest of the child and the child's adoptability was not necessary for the proceedings.

The circuit court entered an order terminating Whitehead's parental rights on May 27, 2015. In the order, the circuit court found that Whitehead had not established significant contacts with M.B.1; therefore, no parental rights had attached, and Whitehead had no parental rights to terminate. The circuit court also found that "any rights that those two putative fathers have or may have, are hereby terminated." The court found that Whitehead neither possessed an order of paternity, nor had he executed an acknowledgment of paternity. The court found that Whitehead had not wanted to participate in any services until he was

found to be the biological father, and that it had denied his request for visitation until the DNA test had been performed and the results had confirmed that Whitehead was the father. The circuit court noted that after he received his results, he had "only visited the juvenile three times" and that "three visits does not significant contacts make. Mr. Whitehead let time go by while he was awaiting paternity testing to see if he was the biological father." Again, the circuit court noted that Whitehead had no parental rights to terminate; therefore, the circuit court was not required to make findings regarding potential harm or adoptability as it would in a termination proceeding. The circuit court found that the bonds between the putative fathers and the juveniles had been formally severed by the order. It is from this order that Whitehead appeals.

## II. *Points on Appeal*

Whitehead asserts three points on appeal. First, Whitehead argues that the circuit court erred in finding that he had not established significant contacts sufficient for his parental rights to attach. Second, Whitehead asserts that because his parental rights attached, the circuit court erred in failing to address the statutorily mandated factors required prior to terminating parental rights, and the circuit court erred by not appointing counsel prior to the termination hearing. In the alternative, Whitehead argues that if his parental rights had not attached, he should have been dismissed as a party prior to termination, and thus, the circuit court erred in entering an order terminating parental rights that did not exist.

We agree with Whitehead's third, alternative argument; therefore, we reverse and remand.

A. The Order Terminating Bennie Whitehead's Parental Rights

1. *Standard of review and applicable law*

This court reviews termination orders de novo. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008).

Arkansas Code Annotated section 9–27–303(47) defines "putative father" as any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile. The U.S. Supreme Court has ruled that putative fathers do not have the same protections as do legal parents. As Judge Stewart wrote, "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Lehr v. Robertson*, 463 U.S. 248 (1983).

Before a mother or a legally established father is subject to having parental rights terminated, the Arkansas termination statute requires the Department to prove that termination is in the child's best interest, and one of the grounds for termination must be proven. Ark. Code Ann. § 9-27-341 (Supp. 2015). However, if the biological or putative father has not established paternity, he is placed in a different legal position. If no legal rights have been established, a putative parent must prove that significant contacts existed with the juvenile in order for the putative parent's rights to attach. Ark. Code Ann. § 9–27–341(c)(2)(A)(ii). The statute protects putative fathers who may have lived in the same home as their child from having their parental rights automatically terminated.

When the putative father's rights have attached, they cannot be terminated without

providing the putative father notice of the hearing or without first giving him the opportunity to be heard. These rights are reflected in Ark. Code Ann. § 9-27-341(B)(i)(ii) and (iii).

2. *Analysis*

The circuit court stated from the bench during the termination hearing that although Whitehead had performed a DNA test, he had neither executed an order of paternity, nor established sufficient contacts such that his parental rights had attached. In the May 27, 2015 order, the circuit court reiterated its finding that Whitehead had not established significant contacts such that his parental rights had attached. It also found that Whitehead's parental rights were terminated.

A similar issue was recently before this court. In *Wright v. Arkansas Department of Human Services*, 2014 Ark. App. 676, 449 S.W.3d 721, the appellant argued that the circuit court erred when it terminated his parental rights because a DNA test showed that he was not the father of the child at the center of the case. This court agreed, and held that "he was not a proper party to proceed against with a termination–of–parental–rights action." *Id.*, 2014 Ark. App. 676, at 9, 449 S.W.3d 721, 726.

In the present case, we hold that the circuit court similarly erred in terminating Whitehead's parental rights. The circuit court found that three hour–long visits was not sufficient to establish significant contact such that his parental rights had attached; thus, the circuit court found that Whitehead had no parental rights to terminate. For the circuit court to then terminate parental rights it found to be nonexistent was in error.

Whitehead urges this court to also consider the issue of whether he established

sufficient contact with M.B.1 such that his parental rights attached. We cannot reach the issue at this time, because no order of dismissal based on whether or not he had established significant contacts was made by the circuit court for us to review. With that in mind, we reverse the order of the circuit court, and we remand the matter for further proceedings to determine the status of Bennie Whitehead's parental rights. Whitehead also argues on appeal that because his parental rights were terminated, he was entitled to an attorney to represent him at the termination hearing and that the court was required to perform the statutorily required analysis of the best interest of the child and the child's adoptability. Because we hold that termination was not proper under these circumstances, we do not consider these issues.

Reversed and remanded.

ABRAMSON and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.