

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-16-561

| | |
|---|---|
| EDWARD HOWERTON<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILD<br>APPELLEES | **Opinion Delivered:** November 16, 2016<br><br>APPEAL FROM THE GREENE COUNTY<br>CIRCUIT COURT<br>[NO. 28JV-14-121]<br><br>HONORABLE BARBARA HALSEY, JUDGE<br><br>REVERSED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's termination of his parental rights to G.E., born 9/12/14. On appeal, appellant argues that the circuit court erred in terminating his parental rights to G.E. because his rights were "nonexisting." We reverse.

On September 26, 2014, appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of G.E. due to her birth to an incarcerated mother.[1] Brandon Edgar was listed as G.E.'s putative father in the petition. The circuit court entered an order granting emergency custody on September 29, 2014. Appellant was not listed as a party in the petition or the order.

Following a hearing on September 30, 2014, the circuit court entered a probable-cause order on the same date noting that the parties had stipulated that probable cause existed

---

[1] Samantha Howerton's parental rights were terminated in the same order that terminated appellant's rights; however, she is not a party to this appeal.

at the time of removal and continued to exist. A determination of Edgar's paternity was reserved therein for adjudication and he was listed in the order as G.E.'s "LEGAL/PUTATIVE FATHER[.]"[2] Appellant still was not listed as a party.

An agreed adjudication order was entered on November 10, 2014. In that order, Edgar's status was changed to that of the putative father only, and appellant was added as G.E.'s "LEGAL FATHER[.]" DHS was ordered "to amend the pleadings to make Mr. Howerton a party to this matter."

A review order was entered on November 25, 2014, after a hearing on the same date. It stated that appellant was incarcerated in Tucker, Arkansas. Both appellant and Edgar were ordered to comply with the case plan and the orders of the circuit court.

DHS filed a motion to terminate reunification services to appellant on December 22, 2014. It alleged therein that appellant had subjected G.E. to aggravated circumstances where an older sibling of G.E. was subjected to sexual abuse by appellant.[3] It also alleged that appellant had subjected G.E. to aggravated circumstances where there was little likelihood of successful reunification with appellant, who was sentenced to 360 months' imprisonment in the Arkansas Department of Correction (ADC) for the abuse of G.E.'s siblings, a period of time which constituted a substantial period of time from G.E.'s perspective.[4] It specifically

---

[2] Edgar was listed as the current legal father on the birth certificate.

[3] Ark. Code Ann. § 9-27-365(c)(2)(A)(iii) (Repl. 2015) (aggravated circumstances include "a child's being exploited").

[4] Ark. Code Ann. § 9-27-365(c)(2)(A)(v) (aggravated circumstances include "[a] determination by the circuit judge that there is little likelihood that services to the family will result in successful reunification"). Though the little-likelihood language was listed, DHS erroneously cited to Ark. Code Ann. § 9-27-365(c)(2)(A)(iv) ("aggravated

alleged that the fact that appellant was a legal father, and not an apparent biological father of G.E., was a basis for termination.[5] The circuit court noted that Edgar had not established paternity at that point.

The circuit court entered a review-and-no-reunification-services order on April 6, 2015, following a March 12, 2015 hearing. It noted that appellant was G.E.'s legal father "by virtue of his continued marriage" to G.E.'s mother and granted DHS's no-reunification–services motion finding that G.E. had been subjected to aggravated circumstances in that there was little likelihood of successful reunification with appellant based on his thirty-year sentence for his rape conviction.[6]

Following an October 19, 2015 hearing, a permanency-planning order was entered on January 19, 2015, authorizing a plan of adoption and a petition for termination of parental rights from DHS. Though appellant was referenced as the legal father, the circuit court stated therein that "[h]aving set the goal to be adoption, the Court finds that Brandon Edgar is indigent; the Court finds the putative parent has established significant contacts with the juvenile such that parental rights [h]ave attached." It stated that appellant "shall be removed as a party to this case as he testified today he is not the biological father of the child." Appellant was denied any contact with G.E., and Edgar was granted supervised visitation.

---

circumstances include "[a] child's being subjected to extreme or repeated cruelty or sexual abuse").

[5] It also alleged that appellant had a prior involuntary termination of parental rights on July 22, 2013, but it later admitted that the previous termination applied to G.E.'s mother only and not appellant.

[6] The circuit court did not address the other grounds listed in DHS's no-reunification motion.

DHS filed a petition for termination of parental rights on November 18, 2015, listing appellant as G.E.'s legal father and Edgar as her putative father. It alleged the following grounds for termination of appellant's rights:

1. That G.E. had been adjudicated dependent-neglected and continued out of appellant's custody for a period of twelve months and the conditions necessitating removal had not been remedied despite a meaningful effort of DHS on account of appellant's conviction and sentence of thirty years' imprisonment for rape;[7]

2. That G.E. had lived outside of appellant's home for a period of twelve months and appellant had willfully failed to provide significant meaningful support or to maintain meaningful contact with G.E. on account of appellant having been imprisoned for the duration of G.E.'s life;[8]

3. That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placing G.E. in appellant's custody is contrary to G.E.'s health, safety, or welfare and that, despite the offer of appropriate family services, appellant has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate his circumstances that prevent the placement of G.E. in his custody on account of his imprisonment for a sentence of thirty years;[9]

4. That appellant was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of G.E.'s life on account of his thirty-year prison sentence;[10]

5. That appellant, as the presumptive legal father, was not G.E.'s biological father and her welfare could best be served by terminating appellant's parental rights as the presumptive legal father; [11] and

---

[7] Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(a)* (Repl. 2015).

[8] Ark. Code Ann. § 9–27–341(b)(3)(B)(ii)*(a)*.

[9] Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

[10] Ark. Code Ann. § 9–27–341(b)(3)(B)(viii)*(a)*. We note that although the criminal-proceedings language was listed, DHS erroneously cited to Ark. Code Ann. § 9–27–341(b)(3)(B)(iii).

[11] Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

6. That appellant had subjected G.E. to aggravated circumstances where the circuit court determined on March 12, 2015, that there was little likelihood that services to appellant would result in successful reunification "due to Edward Howertons [sic] conviction for rape of an 11 year old victim and 8 year old victim. Both of which are [G.E.'s] siblings."[12] [13]

The circuit court held a hearing on the petition on February 16, 2016.

At the beginning of the hearing, the following exchange ensued:

| ATTORNEY FOR MOTHER: | Your Honor, I wanted to point out one thing. I don't know if it will make a difference in this hearing, but I found it odd, so you may too. The permanency planning order that was entered on January the 19th of 2006, paragraph 8, specifically stated and found that Mr. Howerton shall be removed as a party to this case. As he testified today, he is not the biological father of the child. So I am not understanding exactly why Mr. Howerton, at this point not being a party in this matter, would be entitled to pursue any rights whatsoever or to defend himself against termination of parental rights to which he does not have. |
|---|---|
| CIRCUIT COURT: | Well, I vaguely remember the hearing, and I think that the Court would have been correct to make a ruling that based upon his testimony and the time of his incarceration and the lack of access for the purposes of intercourse and conception that he couldn't be the biological father supporting his testimony that, in fact, he was not the biological father. |

---

[12] Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* & *(B)(i)*.

[13] DHS also sought termination of appellant's parental rights to G.E. on the ground that he was found by a court of competent jurisdiction to have had his parental rights involuntarily terminated as to two siblings of G.E pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)*(4). However, the ground was withdrawn at the termination hearing because the order terminating parental rights to G.E.'s siblings was "only in regard to Ms. Howerton" and "[appellant was] not the party involved."

I don't have a problem with all that. I don't remember saying—and I may have very well done that that he should be removed as a party to the case. I think that would have if I did that and its [sic] in the order and I signed it, so I guess I did. I think that's an error because he's a legal father, and those legal rights exist, and something has to happen with regard to those legal rights. So I believe—unless some of you have a—want to straighten out my thinking that that's why he's here today in spite of what that order may say.

. . . .

ATTORNEY FOR MOTHER:    Well, it was my understanding that Mr. Edgar was found to be the legal father. And to me, I—

CIRCUIT COURT:    He was found to be the biological father.

ATTORNEY AD LITEM:    Correct.

ATTORNEY FOR MOTHER:    Not ever made to be the legal father—

CIRCUIT COURT:    I didn't find that he was. Now, if there's an order that said so, there was some—in my review, there was some—and I didn't focus on that particular issue, but my recollection is, from my review, that he said he was father. There was some testimony about access. And he eventually got around to doing some DNA testing that said he was the biological father or maybe his name's on the birth certificate. I don't remember that part. I may have it confused with another case. But I didn't see that we got to the part where we established and maybe we did.

ATTORNEY FOR MOTHER:    I'll look for that.

ATTORNEY FOR DHS:    Your Honor, the Department has submitted to the Court before a paternity test showing that Brandon Edgar was the biological father.

CIRCUIT COURT:    Yeah. I've got that in my notes. I mean, I

|                     |                                                                                                                                                                                                                                                                                                                                                                                                                 |
| ------------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------ |
|                     | remember making that finding. I just didn't know what we—                                                                                                                                                                                                                                                                                                                                                        |
| ATTORNEY FOR DHS:   | I think the hangup was at the time of the—                                                                                                                                                                                                                                                                                                                                                                       |
| CIRCUIT COURT:      | Do you have a birth certificate with his name on it?                                                                                                                                                                                                                                                                                                                                                             |
| ATTORNEY FOR DHS:   | No, Your Honor, I don't.                                                                                                                                                                                                                                                                                                                                                                                          |
| CIRCUIT COURT:      | Because that would—                                                                                                                                                                                                                                                                                                                                                                                               |
| ATTORNEY FOR DHS:   | I'm being told we submitted it. But I cannot remember doing so.                                                                                                                                                                                                                                                                                                                                                   |
| CIRCUIT COURT:      | Okay. Well, if there's a birth certificate with his name on it, then by operation of law, he has rights that the Court has to deal with today. You think it's been offered as an exhibit already? Even if I didn't make a finding of paternity—if y'all can help me, just take a minute and figure that out. Birth certificate of the juvenile naming Brandon Edgar as the biological father. Paternity established 10/19/15 is my note. |

Testimony at the hearing was as follows.

Holly Johnson, family services worker for DHS, testified in pertinent part that appellant is the legal father of G.E. due to her mother being married to appellant at the time G.E. was conceived. However, Edgar was the putative father who was at that time the biological father.

In the midst of Johnson's testimony, appellant's attorney questioned why the court was "terminating on [his] client" when Edgar was the legal father and the biological father, to which the attorney for DHS responded that it was because appellant was married to G.E.'s mother when G.E. was conceived, making him a legal father. Appellant's attorney sought clarification on whether the court had just "made a finding that the other gentlemen was

legal dad" to which the circuit court responded "[w]hat I did was establish paternity based upon a test and [Edgar's] name on the birth certificate. If that means I made two legal fathers, that's what I did. This man has legal rights because of marriage."

Following Johnson's testimony, appellant's counsel moved for a directed verdict, arguing lack of sufficiency on each ground. Of pertinence to this court was his argument regarding the parent-sentenced-to-a-substantial-period-of-the-juvenile's-life and presumptive-legal-father-not-biological-father grounds in which he argued that appellant was not a parent because the circuit court made a finding that Edgar was G.E.'s biological and legal father and G.E. "can't have two legal fathers." He argued that once Edgar was found to be G.E's legal father, appellant was "divested" of any parental rights and "[had] no parental rights to be terminated." The circuit court questioned why the parties were "going through this hearing" and why appellant's counsel did not file a motion at the beginning to have appellant removed as a party. He responded that he was representing his client as appointed. His motion for directed verdict was denied.

Of pertinence, appellant then testified that he was not G.E.'s biological father and did not believe he could be her father because he had been incarcerated since April 6, 2012. He did not have conjugal visits with G.E.'s mother. Following appellant's testimony, he renewed his motion for directed verdict. The motion was denied.

Appellant's counsel then reiterated his argument stating that "[i]f Mr. Edgar has been found, factually, to be the biological father and legally to be legal father, then my client is not the legal father. I don't think that you can have two legal fathers, so his rights shouldn't be terminated because he has not [sic] rights to be terminated." The circuit court responded:

> For the record, the Court found a copy of the birth certificate which has previously been filed as an exhibit in this case. It was DHS No. 1 on September 24th, 2015, showing Brandon Edgar to be the biological father of G.E. By operation of law, that'll make Mr. Edgar a parent to her. That does not change the legal rights that Mr. Howerton has by virtue of the marriage to the mother of the child.

The circuit court then terminated appellant's parental rights. Its order terminating appellant's parental rights was entered on March 28, 2016. Therein, the circuit court stated that "Edward Howerton was married to Samantha Howerton at the time of [G.E.'s] birth. It was determined by this court through evidence of a birth certificate with Brandon Edgar's name included as father and evidence of genetic testing that Brandon Edgar is the biological father of [G.E.]" This timely appeal followed.

This court reviews termination orders de novo.[14] According to Arkansas Code Annotated section 9-27-303, parent means "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile[.]"[15] We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.[16] In its ordinary sense, the word

---

[14] *Whitehead v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 42, at 7, 481 S.W.3d 469, 473 (citing S*trickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008)).

[15] Ark. Code Ann. § 9-27-303(40).

[16] *Brown v. Kelton*, 2011 Ark. 93, at 5, 380 S.W.3d 361, 365 (citing *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95).

"or" is a disjunctive particle that marks an alternative, generally corresponding to "either," as "either this or that"; it is a connective that marks an alternative.[17]

A plain reading of the statute means that a parent can be biological, or by adoption, or by a man who is married to a biological mother at the time of conception or by a man who has signed an acknowledgement of paternity, or by being found by a court of competent jurisdiction to be the biological father. In this case, though initially not included, appellant was eventually added as a party and deemed G.E.'s legal father because she was conceived while appellant was married to her mother. Though Edgar was initially named a legal/putative father and then only a putative father, the circuit court eventually deemed him to be G.E.'s legal father on account of his acknowledged paternity from being listed as the legal father on G.E.'s birth certificate and on account of being found to be G.E.'s biological father through a paternity test. Accordingly, the circuit court gave G.E. two legal fathers. In reference to establishing Edgar's paternity, it stated "If that means I made two legal fathers, that's what I did."

The circuit court gave no legal basis to support its finding that G.E. had or could have two legal fathers. A review of Arkansas statutes provides no definition of a "legal father."[18] Likewise, a review of Arkansas law reveals no basis for a child having two legal fathers, and there is no case directly on point addressing whether a child can have more than

---

[17] *State, Dep't of Career Educ., Div. of Rehab. Servs. v. Means*, 2013 Ark. 173, at 10, 426 S.W.3d 922, 928–29 (citing *Brown v. Kelton*, 2011 Ark. 93, at 4–5, 380 S.W.3d 361, 364 (citing *McCoy v. Walker*, 317 Ark. 86, 89, 876 S.W.2d 252, 254 (1994))).

[18] It is noted that Arkansas Code Annotated section 9-27-303 provides a definition for "parent" and "putative father," but no definition is provided for a "legal father."

SLIP OPINION

one legal father. A review of case law from other jurisdictions shows a consensus that a child

can have only one legal father.[19] While the decisions of other states are not binding on this

court, we find such decisions to be persuasive.

Once the circuit court found that Edgar was G.E.'s legal father, it changed appellant's

status.[20] Appellant could not be G.E.'s legal father—presumptive or otherwise—once the

circuit court found that Edgar was G.E.'s legal father. By finding Edgar to be G.E.'s legal

father, the circuit court effectively divested appellant of all parental rights to G.E.; therefore,

---

[19] *N.A.H. v. S.L.S.*, 9 P.3d 354, 360 (Colo. 2000) ("although a child certainly can have emotional attachments to more than one father figure, she can have only one legal father"); *G.F.C. v. S.G.*, 686 So. 2d 1382, 1386 (Fla. Dist. Ct. App. 1997) ("Only one could be chosen because there is no such thing as dual fathership"); *In re C.N.W.*, 274 Ga. 765, 560 S.E.2d 1 (2002) (a "legal father" is one who adopted a child, was married to the biological mother at the time the child was conceived, married the biological mother after the child was born and recognized the child as his own, is determined to be the father by a final paternity order, or has "legitimated" the child); *In re Custody of C.C.*, 2013 IL App. (3d) 120342, ¶ 94 & 100, 1 N.E.3d 1238, 1254 ("the Illinois legislature only contemplated a child having one legal father and one legal mother[,]" so "Illinois law does not authorize a child to have two legal fathers and one legal mother"); *Helton v. Beaman*, 304 Mich. App. 97, 106, 850 N.W.2d 515, 521 (2015) ("[a] child may have only one legal father."); *Dep't of Soc. Servs. of State ex rel. Wright v. Byer*, 2004 S.D. 41, ¶ 22, 678 N.W.2d 586, 592, on reh'g, 2005 S.D. 37, ¶ 22, 694 N.W.2d 705 (the child "can only have one father"); *In re T.K.Y.*, 205 S.W.3d 343, 351 (Tenn. 2006) (a "legal parent" is a biological mother, a man married to a mother at the time of the child's conception, a man who attempted to marry the child's mother before the child's birth even if the marriage was declared invalid, a man adjudicated to be the child's legal father, or an adoptive parent.); *Marriage of Matter of Morales*, 968 S.W.2d 508, 511 (Tex. App. 1998) ("A child can have only one legal father.); *Pearson v. Pearson*, 2008 UT 24, ¶ 25, 182 P.3d 353, 357 ("a child can have only one legal father").

[20] *See Wright v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 676, at 8, 449 S.W.3d 721, 725 (where legal father's status was changed based on an order voiding a previous order of paternity after a DNA test revealed he was not the biological father, termination was not commensurate with his status which afforded him no rights since he was not a presumptive legal father by any definition; appellant "not a proper party to proceed against with a termination–of–parental–rights action").

appellant had no rights to G.E. that the circuit court could terminate. We note that an alternative ruling would mean that if appellant were to have another child and became subject to a petition for termination of his parental rights to that child, this termination could be used to justify termination in that case.[21] We hold that the circuit court's ruling terminating appellant's parental rights to G.E. was clearly erroneous because he had no rights. We reverse.

Reversed.

WHITEAKER, HIXSON AND HOOFMAN, JJ., agree.

GRUBER and VAUGHT, JJ., dissent.

**LARRY D. VAUGHT, Judge, dissenting.** I dissent from the majority's holding that Arkansas Code Annotated section 9–27–303 (40) (Repl. 2015), which defines the term "parent" as used throughout the juvenile code, allows only one man to be deemed a "parent" for each child in a dependency-neglect case. I fear that the majority's approach prioritizes the interests of adult defendants at the expense of the juveniles' need for permanency.

Section 9–27–341(a)(2) states that termination may only be used in order to clear juveniles for permanent placement. Section 9–27–341(a)(3) states that it is the intent of the legislature that termination be used to provide permanency for the juvenile. In order to accomplish that goal, all outstanding rights to the child that may be claimed now or in the future must be conclusively disposed of. Section 9–27–303(40) establishes that certain persons are automatically deemed to have parental rights as a matter of law. It defines a

---

[21] *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)*(4).*

"parent" as "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to section 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile."

Nowhere in the juvenile code or the caselaw does it state that only one man can be recognized as a parent for each child in a dependency-neglect case. While there can certainly be only one biological father, the code recognizes that there are alternative definitions of a parent and establishes five different avenues by which a person may be legally deemed a parent. Ark. Code Ann. § 9-27-303(40). I believe the circuit court was correct in recognizing that section 9-27-303(40) vests parental rights in anyone who meets the statutory definition of a parent and that termination is the only mechanism for extinguishing those rights.

Arkansas law has long held that a child born of a marriage is legally deemed to be the legitimate child of both spouses. *See R.N. v. J.M. and B.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001); *Leach v. Leach*, 57 Ark. App. 155, 942 S.W.2d 286 (1997). Arkansas Code Annotated section 16-43-901 governs the admissibility, in paternity and child-custody cases, of evidence calling into question the legitimacy of a child born of the marriage. In *Leach*, we held that, while section 16-43-901 abolished Lord Mansfield's Rule, which was the common-law doctrine that made declarations of a husband or wife inadmissible to bastardize a child born after marriage, "the strong presumption of the legitimacy of a child born of marriage continues to be one of the most powerful presumptions in Arkansas law." *Leach*, 57 Ark. App. at 158, 942 S.W.2d at 288; *See also R.N.*, 347 Ark. at 213, 61 S.W.3d at 155;

*Lakey v. Lakey*, 18 Ark. App. 182, 184–85, 712 S.W.2d 663, 665 (1986) (providing in-depth analysis of the common-law and statutory roots of the presumption of legitimacy). Section 16-43-901 (Repl. 1999) codifies the presumption of legitimacy by providing that "upon a finding of the court by clear and convincing evidence that the presumption of legitimacy of a child born of a marriage has been rebutted," the court shall relieve the putative father of further support liability, establish the biological father of the child, and set a support obligation for the child to be paid by the biological father.

I mention the presumption of legitimacy for two reasons. First, the majority appears to be applying section 16-43-901 to the case at bar and interpreting the circuit court's findings as having sufficiently rebutted the presumption of G.E.'s legitimacy. Such an approach ignores the fact that section 9-27-303(40)'s definition of a "parent" addresses a separate and distinct area of the law. Legitimacy is not the issue in a dependency-neglect case. The aim of section 9-27-303(40) is to clear a juvenile for permanent placement. As such, the definition is not framed as a rebuttable presumption but instead establishes that anyone who meets the definition is a "parent" under the juvenile code.

Second, the presumption of legitimacy illustrates the legislature's wisdom in broadly defining "parent" in section 9-27-303(40). As evidenced by the presumption, both the mother's husband and the child's biological father may attempt to assert parental rights to the child. Section 9-27-303(40) recognizes this fact by empowering the circuit court to conclusively address the legal rights of everyone who falls within the statutory definition of a "parent."

Clearly, it is factually possible that multiple individuals may simultaneously meet the statutory definition of a "parent." For example, one man may be married to the mother at the time of the birth, while a second man acknowledges paternity and signs the birth certificate, and a third man is found by a court of competent jurisdiction to be the biological father. The majority's approach assumes that, once the third man is found to be the biological father, such a finding will automatically divest the first two men of parental rights. This approach ignores the fact that those two men continue to meet the statutory definition of a "parent" under section 9-27-303(40). The majority has essentially invented an entirely new procedure for changing a person's status from "parent" to "nonparent," wholly unsanctioned by the juvenile code. The code establishes termination of parental rights, either voluntarily or involuntarily, pursuant to section 9-27-341, as the only legal mechanism for a circuit court to extinguish the legal rights of a person meeting the statutory definition of a "parent."

The facts of this case demonstrate the problem with the majority's approach. During the pendency of this action, Howerton was presented with proof that he is not G.E.'s biological father. Statutorily, he was entitled to voluntarily relinquish his parental rights, thereby eliminating the possibility that an involuntary termination may be used against him in a future dependency-neglect case.[1] He chose not to do so. Instead, he testified that he wanted to be involved in G.E.'s life and argued that she should be placed in his mother's care until he is released from prison. Howerton's testimony makes clear that he considered

---

[1]Section 9-27-341(b)(3)(B)(ix)(*a*)(*4*) states that a previous "involuntary" termination serves as grounds for a subsequent termination.

himself a parent and intended to assert his legal rights to G.E. Therefore, termination was necessary to extinguish the legal rights bestowed on Howerton by virtue of his marriage to G.E.'s mother and to foreclose the possibility that he might later challenge the validity of G.E.'s adoption. While such a challenge would likely prove unsuccessful, it would still serve as an impediment to permanency for G.E. Anything short of conclusive termination of Howerton's parental rights casts a cloud of uncertainty over her future.

Arkansas Code Annotated section 9-27-102 mandates that "the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings." Here, termination of Howerton's parental rights provided G.E. with a level of permanency unavailable otherwise. The majority focuses on the prejudice that Howerton might suffer in the future as a result of being subject to an involuntary termination.[2] Our legislature has made clear, however, that the parent's best interest and the child's best interest are not on equal footing; courts are unequivocally directed to favor the child's best interest. Ark. Code Ann. § 9-27-102. Therefore, I would affirm the circuit court's termination of Howerton's parental rights as being necessary to conclusively clear G.E. for adoption and provide her with true permanency.

GRUBER, J., joins.

---

[2]Such prejudice is easily avoided in most cases because a husband who is found not to be the biological father may simply execute a voluntary consent to termination. The majority relies on section 9-27-341(b)(3)(B)(ix)(*a*)(*4*) for the position that termination of a defendant's parental rights is prejudicial because it may be used as the sole basis for termination of his rights to other children in a future case. However, section 9-27-341(b)(3)(B)(ix)(*a*)(*4*) explicitly applies only to "involuntary" terminations. Involuntary termination of parental rights need only occur where, as here, despite learning that he is not the biological father, the husband continues to assert his legal right to parent the child.



*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.