

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-379

|  |  |
|---|---|
|  | Opinion Delivered September 27, 2017 |
| LAKHRAJ MANOHAR<br>APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JJV-15-216] |
| V. |  |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE CINDY THYER, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Lakhraj Manohar appeals the circuit court's order finding that he is not the legal or biological father of Y.M. and dismissing him from the case. We affirm.

On 9 July 2015, the Department of Human Services (DHS) petitioned for emergency custody of newborn Y.M. The accompanying affidavit explained that both Y.M. and her mother, Vada Beretto, tested positive for methamphetamine and amphetamines at the time of Y.M.'s birth. Manohar was listed as Y.M.'s putative father. An ex parte order for emergency custody was issued, and on 10 July 2015, the circuit court found probable cause to continue DHS's custody of Y.M. Manohar was again listed as Y.M.'s putative father.

In August 2015, the circuit court adjudicated Y.M. dependent-neglected due to "parental unfitness due to the mother's drug use." The court found that Manohar did not contribute to the dependency-neglect but that he was not a fit parent for custody because he "lives with the custodial parent, plus there are issues of domestic violence." The

adjudication order found that Manohar was the biological and legal father of Y.M., and he was ordered to complete numerous requirements, including remaining drug free, completing parenting classes, obtaining and maintaining stable housing and employment, attending domestic-violence counseling, submitting to a drug-and-alcohol assessment, and completing a budget.

A January 2016 review order noted that Manohar and Beretto had been married on 4 December 2015 and that Manohar had been incarcerated since late December on theft charges. His expected release date was 3 February 2016. The order noted that Manohar had completed some requirements of the case plan but had not completed domestic-violence counseling, obtained and maintained stable employment, or prepared and submitted a budget. Both parents were ordered to complete a psychological evaluation. The order also acknowledged a no-contact order between the mother and father and cautioned them not to violate that order.

The case was reviewed again in May 2016, and the court found that neither parent was credible. The court found that Manohar had completed domestic-violence counseling but had not submitted to a drug-and-alcohol assessment or a psychological evaluation and had not prepared and submitted a budget. The court also noted that Manohar had been incarcerated twice since the last hearing, but he could not remember the dates of his incarceration or the reason for his incarceration.

The permanency-planning order, entered in July 2016, changed the goal of the case to adoption. The order noted that Manohar had met some requirements of the case plan but had not obtained and maintained stable housing, prepared and submitted a budget, or

submitted to either a psychological evaluation or a drug-and-alcohol assessment. Without explanation, the circuit court also ordered DNA testing.

On 1 August 2016, DHS petitioned to terminate both parents' rights to Y.M. The petition listed Manohar as the putative father in the caption and the legal father in the body of the petition. As to both parents, DHS alleged the failure-to-remedy ground and the subsequent-factors ground for termination. In October 2016, the circuit court terminated the mother's rights; however, upon Manohar's motion, the termination petition as it related to him was dismissed without prejudice.

The court reviewed the case in November 2016 and found that Manohar had complied with most requirements of the case plan. The court also found that DNA testing showed "a 0.00% possibility that Mr. Manohar is the father of the juvenile." Yet Manohar was still ordered to attend NA meetings and provide proof of attendance to DHS.

In December 2016, DHS petitioned to terminate Manohar's parental rights, citing the subsequent-factors ground and the non-biological-father ground: "The presumptive legal father, Lakhraj Manohar, is not the biological father of the juvenile, [Y.M.], and the welfare of the juvenile can best be served by terminating the parental rights of the presumptive legal father." Ark. Code Ann. § 9-27-341(b)(3)(B)(iii) (Repl. 2015).

The circuit court held a termination hearing on 20 January 2017. At the beginning of the hearing, the circuit court acknowledged a previous discussion held off the record with the parties' attorneys regarding Manohar's parental status and noted "that in a previous hearing before today the Department introduced without any objection a document that was DNA testing that reflected that Mr. Manohar could not be the biological father of

[Y.M.]." After finding that Manohar was not married to the mother when Y.M. was born, and therefore was also not the child's legal father, the court expressed "serious concerns" about proceeding with the hearing. The court mentioned two recent appellate cases, *Wright v. Arkansas Department of Human Services*, 2014 Ark. App. 676, 449 S.W.3d 721, and *Howerton v. Arkansas Department of Human Services*, 2016 Ark. App. 560, 506 S.W.3d 872, in which this court reversed termination orders as to fathers who were not the biological fathers to the children.

Manohar's counsel argued that there was some question about when the parties were married, and the court stated, "I understand what you're saying that that may not be the correct date [of the marriage], but I still don't think that changes his status." Manohar's counsel argued that Manohar

> wants me to strongly object to the Court making a finding that he is not the legal or biological father. . . . For the past few months, he has worked diligently to try to complete all the services that have been offered to him. . . . I know that's not relevant today as to whether or not he is the father, but he wants, he would like something placed in the Court order that he has done all that it's [sic] in his ability to do and try to be reunified with or have his daughter placed in his home.

The court then made the following findings on the record:

> [B]ased on the DNA testing results, the Court finds, and it should have been stated this way previously, that Mr. Manohar is not the biological father of the child. The Court also finds that as a result of those DNA test findings and also based on the false premise, I should say the false testimony of Ms. Manohar, that established the legal finding that he was the father, the Court finds that he is not the biological or legal father of this child.

On 14 February 2017, the circuit court entered an order dismissing Manohar as a party to the case. This appeal followed.

This court reviews termination orders de novo. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008). According to Arkansas Code Annotated section 9-27-303, "parent" means

> a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile[.]

Ark. Code Ann. § 9-27-303(40). A "putative father" is "any man not deemed or adjudicated . . . to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(47). Arkansas statutes provide no definition of a "legal father." *See Howerton v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 560, 506 S.W.3d 872.

Manohar first argues that the circuit court erred in reversing its earlier finding that he was Y.M.'s legal and biological father. He asserts that the adjudication order, which found that he was Y.M.'s legal and biological father, was an appealable order; that no party appealed that order, rendering that finding final; and that any attempt to relitigate the issue was barred by the claim-preclusion facet of the res judicata doctrine. *See Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354 (explaining that the claim-preclusion aspect of res judicata bars relitigation when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies). He contends that in this case, the adjudication resulted in a final, appealable order; it was based on proper jurisdiction; it was

fully contested in good faith; the issue of paternity was involved both times; and the parties were the same. Therefore, the circuit court erred in its "sua sponte relitigation of that issue" and should be reversed.

DHS agrees with Manohar and argues that because he was the legal father at the time of the termination hearing, he was entitled to due-process protections, including, at a minimum, notice and a meaningful opportunity to be heard. Here, however, the circuit court gave Manohar no notice of its intent to find that he was not the "legal father" or to reconsider its previous finding that he was Y.M.'s legal and biological father. DHS acknowledges that its petition to terminate parental rights put Manohar on notice that it intended to terminate his rights because he was not the biological father; however, "the petition did not put Manohar on notice that the circuit court would dismiss him as a party before reaching the merits of the Department's petition." And because he had no notice, he had no meaningful opportunity to defend his rights as Y.M.'s legal father. Finally, DHS contends that *Wright* and *Howerton* do not apply to this case because the fathers in those cases were not "legal fathers" when the termination hearing was held.

Y.M.'s attorney ad litem, on the other hand, argues that the circuit court did not err in reconsidering its earlier finding that Manohar was Y.M.'s legal and biological father. First, the ad litem notes that Manohar's claim-preclusion argument is barred because it was not raised below. Second, the ad litem contends that claim preclusion does not apply because the circuit court's initial paternity finding was not a final judgment on the merits. While the adjudication itself was immediately appealable pursuant to Arkansas Supreme Court Rule 6-9, the other findings within the adjudication order were not.

We agree that Manohar never raised a res judicata argument below, and this court will not consider arguments for the first time on appeal. *Bell v. Bank of Am., N.A.*, 2012 Ark. App. 445, 422 S.W.3d 138. Likewise, no due-process argument was presented below, so it is not preserved for our review. *See Garrison v. Aquino*, 2017 Ark. App. 338, ___ S.W.3d ___.

Manohar also argues that if the court could revisit the issue of Y.M.'s paternity, then the circuit court erred in doing so without a motion challenging paternity, evidence offered on the issue of paternity, and notice given to him so he could prepare a meaningful defense to any claim that he was not Y.M.'s legal or biological father. While acknowledging that it is not binding in this instance, Manohar looks to the Paternity Code for guidance on challenging paternity; and he notes that under Ark. Code Ann. § 9-10-115, a party must challenge the establishment of paternity, and that party bears the burden of proof. *See* Ark. Code Ann. § 9-10-115(d)(1) & (2). In this case, no party challenged paternity; instead, the court addressed the issue on its own motion. And because no one challenged paternity in this case, there was no proof presented on the issue. And finally, § 9-10-115 requires notice before a paternity order can be vacated or modified. In this case, Manohar was only on notice that DHS sought to terminate his parental rights as a presumptive legal father. He had no notice of any challenge to the circuit court's earlier finding that he was the biological and legal father of Y.M. He argues that it was reversible error for the circuit court to alter its findings and dismiss him from the case on its own initiative and without proper notice and an opportunity to be heard.

DHS again agrees with Manohar and argues that dismissal was not the appropriate remedy to address Manohar's parental status; instead, DHS should have been allowed to proceed with termination on the non–biological–father ground. DHS asserts that this ground "is the only ground available to the Department to terminate parental rights based on a 'legal parent' not being a biological parent of the juvenile."

The ad litem again argues that Manohar's argument is not preserved because he is raising this notice argument for the first time on appeal. The ad litem also asserts that Manohar had sufficient notice because he was aware of the DNA testing that showed he was not Y.M.'s biological father, and he was aware of the termination petition, which prayed for "the relief requested or deemed judicially appropriate as is lawful and proper." The ad litem contends that Manohar's dismissal was the proper disposition.

Again, we hold that the notice argument was not raised below, so we may not address it now on appeal. We also note that, in *Howerton*, this court stated that once the circuit court determined that Howerton was not the father of the child, he had no parental rights to terminate and should have been dismissed from the case. In this case, the circuit court properly followed this precedent and dismissed Manohar after determining that he was not Y.M.'s father and thus had no parental rights to terminate. We therefore affirm the circuit court's order.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.
*Jerald A. Sharum*, Office of Chief Counsel, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.